COMLEY, *Appellant,*

*v.*

EMANUEL LUTHERAN CHARITY BOARD,
et al, *Defendants,*
STATE BOARD OF HIGHER
EDUCATION et al, *Respondents.*

(No. 417-542, CA 8489)

582 P2d 443

Charles D. Maier, Portland, argued the cause for appellant. With him on the briefs were Leonard Popick and Galton & Popick, Portland.

E. Richard Bodyfelt, Portland, argued the cause for respondents. With him on the brief were Paul R. Duden and Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

Before Schwab, Chief Judge, and Tanzer and But-
tler, Judges.

TANZER, J.

## TANZER, J.

Plaintiff seeks to recover for personal injuries allegedly sustained as a result of medical malpractice. This is an appeal from an order granting summary judgment to two physicians and the State Board of Higher Education.[1]

Plaintiff's cause of action, as stated in her fourth amended complaint, arose from the post-natal medical treatment administered following her premature birth in 1966. Immediately following her birth, plaintiff was administered oxygen therapy. This therapy was initiated at Emanuel Hospital, where she was born, and continued at Doernbecher Memorial Hospital for Children, where she was transferred when she was six days old. The latter institution is operated by the State Board of Higher Education. Plaintiff further alleges that negligent prescription, administration and supervision of oxygen therapy caused her to sustain retrolental fibroplasia,[2] resulting in total and permanent blindness in both eyes.

The complaint further alleges that defendants knew, or in the exercise of reasonable care should have known, that plaintiff's blindness was caused by the negligent post-natal care which she received and that defendants fraudulently and deceitfully concealed this fact from plaintiff. As a consequence of defendants' false statements, plaintiff alleges that she did not discover the true cause of her blindness until 1975.

The Board and Drs. Noonan and Johnson together moved for summary judgment on the ground that plaintiff's claim against them is barred under the doctrines of sovereign immunity and immunity of state officers and employees. In support of their motion, they submitted affidavits indicating that, at

---

[1] The case has been otherwise disposed of regarding five other defendants.

[2] Retrolental fibroplasia is an abnormal growth of fibrous tissue behind the crystalline lens of the eye. Stedman's Medical Dictionary (1966).

the time of plaintiff's treatment, the individual defendants were employed exclusively by the University of Oregon Medical School, Department of Higher Education, and that they treated plaintiff in the course of their state employment. In addition, Dr. Johnson stated in his affidavit that, while under his care, plaintiff did not receive nor did he administer or order that she be administered oxygen or oxygen incubation. Plaintiff did not file responsive affidavits. The motion was submitted to the court on the basis of defendants' affidavits and exhibits and, by stipulation, the hospital records.

## Summary Judgment

The issue of immunity may properly be raised by demurrer, *Smith v. Cooper,* 256 Or 485, 488, 475 P2d 78, 45 ALR3d 857 (1970), but that is not the only means of interposing an immunity defense. *Wright v. Scappoose School Dist.,* 25 Or App 103, 106, 548 P2d 535 (1976). The determination of whether immunity precludes a plaintiff's recovery is a question of law for the court. *Weaver v. Lane County,* 10 Or App 281, 299, 499 P2d 1351 (1972). As such, unless it is waived,[3] the defense may be raised in any pleading or motion

---

[3] Defendant's first pleading in this case was a demurrer based upon the immunity defense. Therefore the issue was properly preserved. The defense of immunity may be waived if it is not timely raised. ORS 16.330 provides:

"If no objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived any objection, save for the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action. If, however, a demurrer is interposed and overruled, the objection thereby taken shall not be waived by answering over, and the court's ruling thereon shall be subject to review on appeal from final judgment in the cause."

Under this statute, all defenses other than lack of subject matter jurisdiction and failure to state a cause of action are waived if not raised in the first responsive pleading. The latter two defenses may be raised at any time before or after judgment. *Owen v. Bradley,* 231 Or 94, 98, 371 P2d 966 (1962); *Salitan et al v. Dashney et al,* 219 Or 553, 559, 347 P2d 974, 81 ALR2d 532 (1959). Demurrers which raise the defense of immunity have been said to be based upon a failure to state a cause of action. *See, Donahue v. Bowers/Steward,* 19 Or App 50, 526 P2d 616 *rev den* (1974); *Baker v. Straumfjord,* 10 Or App 414, 500 P2d 496 *rev den* (1972); *Leonard v.*

appropriate for joining legal issues. *See, e.g., Hulen v. City of Hermiston,* 30 Or App 1141, 569 P2d 665 (1977) (motion to strike treated as demurrer); *Lanning v. State Hwy. Comm.,* 15 Or App 310, 515 P2d 1355 (1973) (motion for directed verdict and nonsuit); *Sullivan v. State,* 15 Or App 149, 515 P2d 193 (1973) (motion for directed verdict); *Weaver v. Lane County, supra* (motion for judgment N.O.V.). Summary judgment is appropriate where there are no material issues of fact and the moving party is entitled to judgment as a matter of law. ORS 18.105(3). If there are no disputed facts relevant to the issue of immunity, it may therefore be raised and resolved on a motion for summary judgment. *See, Higgins v. Redding,* 34 Or App 1029, 580 P2d 580 (1978).

■ ■ When, as in this case, a summary judgment motion is supported by affidavits, the adverse party may not rely upon the allegations of his pleadings to controvert matter contained in those affidavits and thus to preserve factual issues. ORS 18.105(4).[4] Absent counter-affidavits or conflicting evidence, facts set forth in

---

*Jackson,* 6 Or App 613, 488 P2d 838 *rev den* (1971). However, this is an inaccurate characterization. Immunity insulates defendant from liability for tortious conduct because of that defendant's favored status. Notwithstanding immunity, the defendant's conduct remains equally tortious in character. W. Prosser, Law of Torts, 970 (4th Ed 1971).

[4]ORS 18.105(4) provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or further affidavits. When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

a supporting affidavit will be taken as true. *See, Pelege v. Chrysler,* 278 Or 223, 227, 563 P2d 701 (1977).

■ The foregoing principle applies to Dr. Johnson's defense. Plaintiff's cause of action is based on the administration of oxygen therapy and Dr. Johnson's affidavit states that he did not administer oxygen therapy to plaintiff or order that it be administered. Plaintiff's complaint contradicts Dr. Johnson's affidavit, but there is no counter-affidavit or evidence which does so. Therefore, Dr. Johnson's affidavit is taken as established fact and, because there is no material issue of fact as to his alleged negligence, summary judgment as to Dr. Johnson was proper.

Governmental immunity is the sole issue presented by the motions for summary judgment of Dr. Noonan and the Board. The supporting affidavits allege that at all pertinent times Dr. Noonan was in the employ of the State of Oregon. This fact is contradicted neither by the complaint nor by an opposing affidavit. Therefore, we accept as fact that Dr. Noonan's actions were as a state employee and determine as to each remaining defendant whether that fact constitutes a defense to the cause of action alleged in the complaint.

## Applicability of the Tort Claims Act

■ Prior to enactment of the Tort Claims Act, ORS 30.260 to 30.300, in 1968, the State Board of Higher Education was wholly immune from liability for its torts under the doctrine of governmental immunity. *Bacon v. Harris et al,* 221 Or 553, 557, 352 P2d 472 (1960). Under the Act, the Board is liable for certain of its torts for claims arising after July 1, 1968. ORS 30.265(4) provides:

> "ORS 30.260 to 30.300 do not apply to any claim against any public body or its officers, employes or agents acting within the scope of their employment arising before July 1, 1968. Any such claim may be presented and enforced to the same extent and subject to the same procedure and restrictions as if ORS 30.260 to 30.300 had not been adopted."

Here, the injury and all the acts causing the injury constituting plaintiff's claim occurred in 1966, *i.e.,* prior to the effective date of the exposure of the Board to liability for claims created by enactment of the Tort Claims Act. Therefore, the Board remains immune from liability for the 1966 claim.

■ ■ This conclusion is not affected by plaintiff's allegation that defendants concealed the cause of her injury by fraudulent and deceitful statements. There is no assertion that plaintiff was damaged by the statements; indeed, under plaintiff's theory, were it not for concealment, plaintiff's claim in its entirety would indisputably have arisen prior to July 1, 1968, and would have been barred. The alleged false statements are not a part of the cause of action. If there was no liability initially, concealment of non-actionable facts cannot create liability where none existed.[5]

Therefore, the Tort Claims Act does not apply and summary judgment was properly allowed in favor of the Board.

## Common Law Liability of a Public Employee; Immunity for Discretionary Acts

Under the common law, the immunity of the state from tort liability did not extend to the employees of the state. An exception to the liability of public

---

[5]Discovery of the causation or extent of the injury is arguably an element of the cause of action under some cases applying the statute of limitations, *e.g., Niedermeyer v. Dusenbery,* 275 Or 83, 549 P2d 111 (1976); *U.S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976). The purpose of such an extension of limitation, however, is to avoid the unfairness of the law telling an injured person

"* * * '[y]ou had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy.' * * *" *Berry v. Branner,* 245 Or 307, 312, 421 P2d 996 (1966).

Here, plaintiff had no remedy when the injury occurred and, if lulled into inaction, lost nothing thereby. Hence, the doctrine extending limitations until after discovery has no application.

Moreover, any analogy to the statute of limitations is tenuous. The Tort Claims Act was intended to remove a bar to liability. Limitations are to impose finality. The purposes of each are different and the logic is not necessarily transferrable.

employees existed for so-called discretionary acts. Thus, if Dr. Noonan was immune, it must be because his conduct was of a discretionary nature. The elusive term "discretionary" and its opposite "ministerial" have not been defined or applied by Oregon case law in the context of medical malpractice. *But see, Baker v. Straumfjord,* 10 Or App 414, 500 P2d 496 *rev den* (1972). Therefore, we must look to the theoretical basis of the discretionary act exception to common law liability in order to apply it in this new context.

The seminal case dealing with the discretionary act exception is *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970).[6] In that case, the plaintiff sued the State Highway Commission and its employees seeking to recover damages for the death of her testator in an automobile accident. Plaintiff contended that a left turn on a certain highway was so poorly designed and marked that the driver did not notice the turn and therefore proceeded straight ahead, off the road and over a steep embankment.

The Supreme Court held that designing the road and deciding whether to post warning signs were discretionary acts. In so doing, the court observed that, because performance of nearly all government functions involves some judgment or choice, application of the discretionary act exception requires that a line be drawn at some point along the continuum of discretion, with liability on one side and immunity on the other. *Smith v. Cooper,* 256 Or at 499. The court then reviewed several of the tests which have been developed for determining on which side of that line a particular case lies.

[6] Although *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), analyzes the common law discretionary act exception to public employee liability, it is generally cited (in cases too numerous to profitably list) as authority for the application of the statutory discretionary act exception to liability of the state and its officers under the Tort Claims Act. The common law and statutory exceptions are identical and authority is essentially interchangeable. *Dizick v. Umpqua Community College,* 33 Or App 559, 562-63, 577 P2d 534 *rev pending* (1978); *Lanning v. Hwy. Comm.,* 15 Or App 310, 315, 515 P2d 1355 (1973).

First, in *Smith v. Cooper,* the court discussed cases which attempted to resolve the discretionary/ministerial dichotomy by relying upon the literal meaning of the two terms. These cases held that acts which involved judgment were discretionary whereas acts which were mandatory were ministerial. *See, e.g., Antin v. Union High School Dist. No. 2,* 130 Or 461, 280 P 664, 66 ALR 1271 (1929). The Supreme Court declined to apply this literal approach because under it nearly every governmental act involves some degree of judgment and thus would be discretionary, leaving nothing excepted by the purported exception. *Smith v. Cooper,* 256 Or at 499.[7]

Next, the court considered the planning/operational distinction employed by some courts interpreting the federal Tort Claims Act. Under this test, action undertaken in the planning stage of a government operation is deemed discretionary whereas mere execution of the plan as developed is deemed ministerial. *See, e.g., Mahler v. United States,* 306 F2d 713 (3rd Cir 1962). The court declined to apply this distinction because it merely substituted one amorphous and intrinsically meaningless formula for another and was therefore not helpful. *See, Smith v. Cooper,* 256 Or at 504.[8]

The court then set out with apparent approval the following quotation:

"'* * * Although it may be possible to set forth a definitive rule which would determine in every instance

[7] *But see* the reasoning in *Sullivan v. State,* 15 Or App 149, 152, 515 P2d 193 (1973) (nonliability for failure to grant good time to a prisoner); *Chemical Waste Stor. v. Day/Mann,* 14 Or App 515, 521, 513 P2d 1193 *rev den* (1973) (nonliability for prohibiting manufacturer from transporting chemical residues); and *Weaver v. Lane County,* 10 Or App 281, 288-89, 499 P2d 1351 (1972) (nonliability for "designing, constructing, maintaining and inspecting * * * county roads"). The results of such cases, if not the reasoning, are consistent with *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970).

[8] Four years later, the court resurrected at least the terminology of this federal test. In a case involving alleged failure to inspect a bridge for icy conditions, the court held that "the kind of highway maintenance involved * * * was clearly * * * ministerial or operational." *Daugherty v. State Highway Comm.,* 270 Or 144, 147-48, 526 P2d 1005 (1974).

whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages.' " *Lipman v. Brisbane Elementary Sch. Dist.,* 55 Cal 2d 224, 230, 11 Cal Rptr 97, 359 P2d 465 (1961), *quoted in Smith v. Cooper,* 256 Or at 505.

The California court's approach is no less amorphous than the planning/operational approach, but it is more formulaic. Because the approach is quoted with favor but not applied in the decisional part of the opinion, it cannot be regarded as itself a statement of the test.[9] Rather, it appears simply to be a predicative recognition that any approach must recognize that protected government decisions require a balancing of public and private interests. Even so, the formula is not very helpful and cannot be applied literally because every governmental function is important, yet not every governmental function entails blanket immunity. Therefore we take these factors to be helpful guidelines, not determinative considerations.

The court then adopted an approach based upon a recognition that there are decisions reserved to other branches of government free of judicial supervision. The court said that a decision as to whether certain conduct was discretionary "should be guided by the purpose of the immunity doctrine," 256 Or at 505, and then went on to describe the principle which underlies the discretionary act exception:

"The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor [*sic*] is that

[9] *But see, Pickett v. Washington County,* 31 Or App 1263, 572 P2d 364 (1977).

the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc."[10] *Smith v. Cooper,* 256 Or at 506.

The court cited with approval authorities which noted that there were certain types of decisions which were expressly committed to other branches of government and which, because of the broad policy considerations involved, the courts were peculiarly unsuited to make. To permit a jury or judge to pass upon the reasonableness of such governmental decisions in the context of a tort action would dilute the decision-making authority of the branch of government entrusted with the responsibility for that decision. The judiciary would thus become the final arbiter of the political decisions of the other co-equal branches of government. The court viewed the discretionary act exception as a shield from this sort of judicial usurpation. In a sense, the exception served to preserve the separation-of-powers principle upon which our government was founded.

The decision in *Smith v. Cooper* was ultimately based upon this separation-of-powers analysis. After reciting the allegations of the complaint, the court concluded:

> "These allegations charge conduct by the executive branch of the government which should not be reviewed by the judicial branch. * * *" 256 Or at 511.

Even this statement of the doctrinal principle does not provide a precise litmus to test for discretionary acts, but it enables us to better know what we are looking for when we analyze any particular governmental act.

---

[10] *Cf.* Blackstone's Commentaries at 221:

"* * * [W]hatever is exceptionable in the conduct of public affairs, is not to be imputed to the king, nor is he answerable for it personally to his people; for this doctrine would totally destroy that constitutional independence of the crown, which is necessary for the balance of power in our free and active, and therefore compounded, constitution. * * *"

In its most recent opinion on governmental immunity, *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978), the Supreme Court performed a result-oriented rather than doctrinal review of prior decisions and that approach yielded a statement of the factors which characterize discretionary governmental acts which is entirely harmonious with that which the more theoretical approach of *Smith v. Cooper* yields:

> "* * * [I]nsofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment." *McBride v. Magnuson,* 282 Or at 437.

The division in the policy-making/implementative action continuum is between decisions on one side which require governmental judgment and judicial abstention, and, the other side, decisions which do not involve the balancing of public considerations and are susceptible to judicial examination even though they may involve judgment of a different sort. Therefore, the decisions to provide health services, which and how many services to provide, and where and how to provide them are clearly legislative and executive decisions requiring a political balancing of public interests which the courts are neither authorized nor suited to review. Acts of implementation, however, such as the driving of an ambulance, the maintenance of a staircase and the preparation of food for patients have no quality of political or governmental judgment about them which would cause the judiciary to abstain from applying the rules of due care just as it does when such acts are performed in a nongovernmental setting.

This distinction is well illustrated by *Baker v. State Bd. of Higher Ed.,* 20 Or App 277, 531 P2d 716 *rev den* (1975), in which we held that the state was not liable

under the discretionary act exception of the Tort Claims Act for having decided to hold a "Powwow" at an allegedly unsafe county fairground, but that the county would be liable for injuries arising from failure to maintain the fairgrounds in a safe condition. *See also, Lanning v. State Hwy. Comm.,* 15 Or App 310, 515 P2d 1355 (1973).[11]

The principle applies readily to medical malpractice claims. In *Costley v. United States,* 181 F2d 723 (5th Cir 1950), eligibility and hospital admission were deemed discretionary, but the court held that there was a ministerial duty to provide treatment non-negligently. The principle is equally applicable to this case.

---

[11] *Compare, Indian Towing Co. v. United States,* 350 US 61, 69, 76 S Ct 122, 100 L Ed 48 (1955), applying the discretionary act exception of the federal Tort Claims Act.

"The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act."

Federal cases applying a rule analogous to the "Good Samaritan" rule are discussed favorably in O. Reynolds, *The Discretionary Function Exception of the Federal Tort Claims Act,* 57 Georgetown L J 81, 107 (1968-69), which concludes aptly:

"The rule that once a task is undertaken by the Government it must be performed with due care is well suited to the situation in which a patient admitted to a government hospital receives allegedly negligent treatment. The rule has also been applied in a number of other situations: once a rescue operation is undertaken, it must be performed with due care; if the Government contracts to maintain an irrigation ditch, it is liable for its being an attractive nuisance; having decided to place pilings in a canal, the Government must use care to see that the submerged ones do not damage boats; after deciding to reactivate ordinance works and construct substations, due care must be exercised to protect those working in the substations. Analogous to the operational-planning distinction, no set formula is stated, but the examples indicate the manner in which courts have reasoned. The results under the two different tests are similar: formulation of a general plan is within the exception; application of the plan to individual situations usually is not." (Footnotes omitted.)

## Application of the Discretionary Act
## Exception to this Case

■ Plaintiff alleges that defendants were negligent in one or more of these particulars:

"(1) In failing to discover that excessive quantities and volumes of oxygen were being administered to Plaintiff minor;

"(2) In failing to give direct and explicit orders as to the quantities and volume of oxygen to be administered to Plaintiff minor;

"(3) In failing to test, inspect and regulate oxygen administering apparatus and equipment used by Defendants, and each of them, in the administering of oxygen to Plaintiff minor when Defendants, and each of them, knew or should have known said apparatus and equipment required testing, inspection and regulation prior to use;

"(4) In failing to monitor oxygen administration apparatus and equipment during its use on Plaintiff minor when Defendants, and each of them, knew or should have known said apparatus and equipment required monitoring during its use on Plaintiff minor;

"(5) In failing to promptly diagnose and treat Plaintiff minor when Defendants, and each of them, knew or should have known that excessive oxygen was causing retrolental fibroplasia to develop within Plaintiff minor's eyes;

"(6) In delivering excessive volumes of oxygen to Plaintiff minor for an excessive number of days when Defendants, and each of them, knew or should have known such delivery of oxygen was and is a cause of retrolental fibroplasia in premature infants, especially Plaintiff minor;

"(7) In using a defective oxygen analyzer in the administration of oxygen to Plaintiff minor when Defendants, and each of them, knew or should have known said oxygen analyzer was defective."

At least some of these allegations charge conduct which is, in the literal sense, discretionary in that the conduct may be a result of choice. However, none of the allegations involve the sort of policy-based deci-

sions which are insulated from judicial scrutiny by the discretionary act exception. None of Dr. Noonan's alleged acts involved a weighing of factors for the purpose of attaining the utmost public benefit. Nor did they involve a decision to pursue one public policy, at the expense of others. In sum, whatever may have been involved, there was no governmental discretion. Rather, the alleged acts involved the same balancing of risk against benefit which every physician must undertake in treating patients and which every individual must undertake in fulfilling his or her duty of care to other individual members of society, whether in or out of government. Judicial review of that balancing process does not usurp the responsibilities of another branch of government. Furthermore, the review of allegations of professional malpractice is a function which the courts are competent and suited to perform regardless of whether the acts originate in government. Indeed, such judicial review and legal accountability is the essence of negligence jurisprudence.

Therefore, we hold that plaintiff's complaint charges conduct which falls outside the discretionary act exception and thus Dr. Noonan is not immune.

## Conclusion

We have held that summary judgment was properly granted as to defendant Dr. Johnson because the undisputed evidence indicates that, as a matter of law, he did not negligently treat plaintiff in the manner alleged. The claim against the State Board of Higher Education having arisen prior to the effective date of the Tort Claims Act, that defendant is immune from liability. Therefore, with respect to Dr. Johnson and the Board, the judgment of the circuit court is affirmed. Summary judgment was erroneous as to Dr. Noonan because he is not immune. Accordingly, as to Dr. Noonan, the judgment must be reversed.

Affirmed in part; reversed in part and remanded.