602 P.2d 246 (1979)
288 Or. 3
Arthur W. DICKENS, Jr., Petitioner,
v.
Michael J. DeBolt, Respondent.
TC L-6275; CA 11338; SC 26192.
Supreme Court of Oregon, In Banc.
Argued and Submitted October 2, 1979.
Decided November 6, 1979.
*247 Roy Kilpatrick, Mount Vernon, argued the cause for petitioner. On the briefs were Mike Kilpatrick, Milo Pope and Kilpatrick & Pope, Mount Vernon.
W. Benny Won, Asst. Atty. Gen., Salem, argued the cause for respondent. With him on the brief were James A. Redden, Atty. Gen., and Walter L. Barrie, Sol. Gen., Salem.
TONGUE, Justice.
This is an action for conversion by a fisherman against a state police officer who seized a sturgeon which he mistakenly believed to have been caught illegally and may have then eaten most of the "evidence." The case was tried before a jury, which returned a verdict of $250 in general damages and $750 punitive damages. The Attorney General appealed from the resulting judgment on behalf of the state police officer. The Court of Appeals reversed the judgment upon the ground that Oregon statutes confer complete and absolute immunity upon a state police officer in such a case. 39 Or. App. 575, 592 P.2d 1082 (1979).[1] We allowed plaintiff's petition for review.
*248 The facts are bizarre. On September 12, 1977, plaintiff with his wife, an uncle and an aunt, drove over 150 miles from their home to fish for sturgeon in the Columbia River below the John Day Dam. He had fished for sturgeon during the past two or three years, but had previously caught only one sturgeon. Upon arrival there plaintiff fished from a platform on the river below the dam. There he met two other sturgeon fishermen, Rans Golden and Gregory Elliot.
At about sundown plaintiff hooked a fish. After a good fight lasting about 30 minutes he landed his prize, a sturgeon  a "royal fish"  43 inches in length and weighing between 40 and 45 pounds.[2] Being concerned over the fish spoiling and it being too late to drive home, plaintiff put the end of a rope through the gills of the sturgeon and tied the other end of the rope to a cable under the platform, leaving the fish alive and in the river.
Because Golden and Elliot were still fishing and had a mobile home parked nearby, plaintiff asked them to "keep an eye" on his sturgeon. Plaintiff and his party then went to a motel about one mile away in Rufus, where they had dinner and spent the night.
On returning to the river the next morning to get his sturgeon, plaintiff found the rope cut and the fish gone. He was then told by Rans Golden that a state police officer had taken the fish and had said that if plaintiff wanted it he "would have to call." Plaintiff testified that he then called the desk sergeant of the state police at Arlington, told him what had happened and asked for his fish, but was told that he would not get it back. Plaintiff also testified that he told the desk sergeant that he had witnesses who had seen him catch the fish, and was told that "if we went to court all seven of us could go to jail for perjury."
Plaintiff never saw his sturgeon again. He testified that the "going price" for the 40 to 45 pounds of meat, which he had planned to eat, was $5.65 per pound and that the rope was a ski rope worth from $10 to $15. He was never "interviewed" by the state police, much less arrested or charged with catching the sturgeon illegally.
Defendant was the state police officer who took plaintiff's sturgeon. He testified that on the evening of that day he observed two persons fishing on the platform below the dam and saw one of them catch a sturgeon at about 10:00 p.m., it then being illegal to fish for sturgeon. He also saw them tie a rope through its gills and tie the rope to a cable under the platform.
Defendant arrested the two fishermen, Rans Golden and Gregory Elliot, for angling after hours. He then looked over the platform and saw one sturgeon tied to a cable. He testified that he took the fish "as evidence" in the case against Golden and Elliot. He admitted, however, that they told him that the sturgeon "belonged to some people that were in a motel in Rufus," but that he did not "check (that) out," apparently because he did not believe Golden and Elliot, who had not told him that there were two sturgeon tied to cables under the platform, including the one that he had seen them catch and which he believed to be the fish that he took "as evidence."
Defendant then took plaintiff's sturgeon to Arlington, where he lived. He testified that because the state police "didn't have any deep freeze facilities there," it "seemed like a reasonable thing to do" for him to put the sturgeon in the freezer at his home.
Before doing so, however, defendant skinned and fileted the sturgeon, and "packaged it up." He testified that he also put a state police evidence tag "on the package," with his name and number and also the names of Elliot and Golden and the charge against them. At the trial defendant produced a package of frozen fish with such a tag on it.
*249 Defendant testified that after the fish was fileted, the meat weighed 8 pounds. He also testified that he had not eaten any of the sturgeon. A professional fish buyer called as a witness by the defense to testify to a market value of $.85 per pound for the sturgeon, if dressed, also testified that a 40 pound sturgeon, after dressing by removal of head and entrails, would "lose at least 15 percent," depending on the size of the head (or at least 6 pounds, with up to 34 pounds of the 40 pound fish remaining).
The answer filed by the Attorney General on behalf of defendant, in addition to denying most of the facts alleged in plaintiff's complaint for conversion, alleged the following affirmative defenses:
"At all times material herein, defendant was acting in his official capacity as a trooper of the Oregon State Police, and seized said sturgeon and water ski rope as the fruits of a crime and at the time of and pursuant to a valid arrest." (ORS 496.620).
and,
"At all times material herein, defendant, a trooper of the Oregon State Police, was performing a discretionary function." (ORS 30.265(3)(c)).
At the conclusion of the testimony defendant moved for a directed verdict upon the ground, among others, that ORS 496.620 conferred complete and absolute immunity upon defendant. Later, after the jury verdict in favor of plaintiff, defendant moved for a judgment notwithstanding the verdict on the same grounds. In the order denying that motion the trial judge held as follows:
"It appearing to this court, that there was evidence at the trial of the case from which the jury could have inferred that the defendant took the sturgeon in question, stored it in his private freezer and then ate part of it. The storage of the fish in the private freezer might have been within the defendant's scope of employment, but there is no way a State Policeman's duties include the eating of filet of sturgeon."
We agree with the trial judge.
In holding that the trial judge erred in denying defendant's motion for directed verdict, the Court of Appeals recognized that the jury could have properly inferred from the fact that "there was an unexplained shrinkage in the amount of sturgeon still available at the time of trial," not only that "the officer had eaten a portion of the fish," but also that "the officer intended to do so when he seized the fish." (39 Or. App. at 580, 592 P.2d at 1085).
The Court of Appeals reasoned, however, that ORS 496.620 was "designed to prevent civil actions from having a chilling effect on the vigorous enforcement of the game laws"; that this statutory "exemption from liability does not mention `good faith'" as urged by the plaintiff; that "[a] fuller grant of immunity can hardly be imagined"; that "good faith" is irrelevant in determining whether a state officer is immune for discretionary acts under ORS 30.265(3)(c)  the state Tort Claims Act  and that "the legislature is presumed to mean something different by the language of ORS 496.620, or there would be no reason to enact it." The Court of Appeals then concluded that:
"Something different in this context must involve greater protection to the officer whose acts are later called into question. `Bad faith,' therefore, cannot be permitted to defeat immunity under ORS 496.620 when it would not defeat immunity under ORS 30.265(3)(c)." (39 Or. App. at 580-81, 592 P.2d at 1085-86.)
We disagree.
First of all, it cannot properly be "presumed" that the legislature, in enacting ORS 496.620, intended it to mean "something different" than the immunity provided by ORS 30.265(3)(c). The statute which now appears as 496.620 was enacted in 1921 (1921 Or. Laws Ch. 153 § 58). This was 46 years before adoption of the Oregon Tort Claims Act in 1967, including ORS 30.265(3)(c) (1967 Or. Laws Ch. 627 § 3).
It may be assumed, however, that ORS 496.620 was designed to prevent civil actions from having a "chilling effect on *250 the vigorous enforcement of the game laws." It may or may not also be true that in determining whether a state officer is immune for a "discretionary act" under ORS 30.265(3)(c) his "good faith" is irrelevant. In addition, it may or may not be true that "bad faith" does not defeat immunity under ORS 496.620.
As we analyze the problem presented by this case, however, the issue to be decided in determining whether ORS 496.620 provides immunity to the defendant is not whether he acted in good faith or in bad faith, but whether he was engaged in "the enforcement or attempted enforcement of * * * the wild life laws" or in "the exercise or attempted exercise of any of the duties or privileges granted to or imposed by law upon" the defendant when he "ate most of the evidence," as the jury was entitled to find.
We may agree that when a state police officer seizes a fish that he believes to have been caught illegally he is entitled to immunity under ORS 496.620. We do not believe, however, that this statute can properly be construed to mean when a state police officer "eats the evidence" he is then engaged in either the "enforcement or attempted enforcement" of the game laws or the "exercise or attempted exercise" of any of his "duties or privileges" as an officer. It follows, in our opinion, that the reasoning on which the Court of Appeals based its decision of this case is faulty and that it was in error in holding that ORS 496.620 granted an immunity to the defendant as a complete defense to this case.
For similar reasons, we hold that ORS 30.265(3)(c) of the Oregon Tort Claims Act does not confer immunity upon defendant as for the performance of a discretionary function or duty. Thus, we hold that when defendant ate most of the sturgeon, as the jury could properly find, he was not then acting "within the scope of [his] employment or duties," within the meaning of that statute.
In oral argument before this court on plaintiff's petition for review, it was contended, among other things, by the Assistant Attorney General who argued the case on behalf of defendant that the Court of Appeals was correct in its holding because the conversion alleged by plaintiff's complaint was not that defendant "ate the evidence," but that he "took and carried away" the sturgeon (i.e., the initial seizure of the fish) and that ORS 496.680(1) specifically authorizes game enforcement officers to seize fish caught in violation of wildlife laws.
First of all, it is to be noted that plaintiff's complaint not only alleges that defendant "took and carried away" the sturgeon, but also alleges that defendant "converted the same to defendant's own use." In any event, it is important to distinguish between the question whether a conversion was properly alleged and proved and the separate question whether, assuming that there was a conversion, ORS 496.620 provides an immunity to an officer who engages in such a conversion.
Both in instructions requested at the time of trial on behalf of the defendant and in the brief filed on his behalf in the Court of Appeals, it is contended by the Attorney General that a conversion in such a case is to be defined as held by this court in Mustola v. Toddy, 253 Or. 658, 456 P.2d 1004 (1969) (also an action for conversion against a state police officer) in which this court (at 663-64, 456 P.2d 1004) adopted Restatement (Second) of Torts § 222A (1965) as a definition of conversion for application in such a case and which reads as follows:
"§ 222A. What Constitutes Conversion
"(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
"(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
"(a) the extent and duration of the actor's exercise of dominion or control;

*251 "(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
"(c) the actor's good faith;
"(d) the extent and duration of the resulting interference with the other's right of control;
"(e) the harm done to the chattel;
"(f) the inconvenience and expense caused to the other."
It may or may not be true that under the allegation of plaintiff's complaint, the defendant could have objected to any evidence of defendant's conduct after the original seizure and "carrying away" of the sturgeon. No such objection was made, however, and the instruction defining the term "conversion" for the purposes of this case as requested by the Attorney General on behalf of the defendant (and given by the trial judge) was in the exact terms of Restatement § 222A. No contention was made by the Attorney General that under the terms of § 222A the only possible conversion under the facts of this case was the original seizure of the sturgeon or that if the original seizure was not a conversion the subsequent eating of the fish could not have been a conversion. Accordingly, we need not decide that question in this case.[3]
Whether defendant converted the fish at the time he took it from the river or whether he converted it at the time it was eaten, however, is immaterial. ORS 496.620 would protect the officer from the legal consequences of that conversion only as long as he held the fish for the purpose which the statute protects; i.e., attempted enforcement of the wild life laws. The same is also true of ORS 30.265(3)(c). For reasons previously stated, we hold that those statutes do not confer such an immunity.[4] It follows, in our opinion, that the trial court properly denied defendant's motion for a directed verdict and that the Court of Appeals erred in holding to the contrary.
However, additional assignments of error relating to three requested instructions to the jury are also set forth in the brief of the Attorney General as appellant on behalf of the defendant. Those assignments of error were not considered by the Court of Appeals. They were also not discussed in plaintiff's brief as respondent in the Court of Appeals.
One of the requested instructions would have told the jury of a "factor" which this court in Mustola v. Toddy, supra, held to be one which should be considered in an action for conversion against a police officer. It should have been given.
In Mustola v. Toddy, 253 Or. 658, 666, 456 P.2d 1004 (1969), also an action for conversion against a state police officer, this court said, after adopting the definition of conversion as stated in Restatement (Second) of Torts, § 222A for application in such cases, that:
"* * * This formulation of the definition of conversion limits the tort to those cases in which the defendant may justly be required to pay full value. In determining the justness of the imposition of this burden on a defendant we are to consider the factors enumerated in subsection (2) of Section 222A, Restatement (Second) of Torts. And we are informed by comment d to this section that the factors listed in subsection (2) `are not intended to be exclusive.' There is a factor not listed in subsection (2) which, we think, is controlling in the present case. That factor is the desirability of permitting police officers acting in emergency situations to have sufficient leeway in dealing with property coming under their control as an incident to law enforcement that they are not unduly inhibited in carrying out their duties * * *." (Emphasis added) 253 Or. at 666, 456 P.2d at 1008.
*252 The trial court instructed the jury in the terms of Restatement § 22A, including the "factors" as stated in that definition of conversion. The court did not, however, tell the jury of the additional "factor" as set forth in Mustola v. Toddy, supra.
The second requested instruction would have told the jury that:
"One is privileged to commit an act which would otherwise be a conversion if he is acting in discharge of duty created by law to preserve the public safety, health, peace or other interest, and his act is reasonably necessary to the performance of his duty or the exercise of his authority. If you find that the defendant was so acting in this case, then you must return your verdict in favor of the defendant."
It might have been preferable to state such an instruction in the express terms of the statutes. This requested instruction, however, was also a correct statement of the law and the defendant was entitled to such an instruction.
We cannot properly say that the failure to give either of these requested instructions was not prejudicial to the defendant. The rule as stated in either instruction would not have provided a defense in this case if the jury found, as it was entitled to find, that defendant ate most of the sturgeon.[5] We cannot be certain, however, that this was the basis of the jury verdict. For all we know, the jury may have found that defendant did not eat the fish, but that the original taking of the fish was a conversion. In such an event these two requested instructions might well have caused the jury to arrive at a different result.
The third requested instruction was that:
"If you find that, at the time the fish was taken by the defendant, the defendant was a State Police Officer acting within the course and scope of his employment, then you must not award any punitive damages to the plaintiff." (Emphasis added)
This requested instruction, as applied to the facts of this case, was misleading and confusing at the least, if not an incorrect statement of the law as applied to such facts. The jury was entitled to find from the evidence in this case that even if the defendant acted "within the [course and] scope of [his] employment" when "the fish was taken," he later ate most of the sturgeon and that he was not "acting within the course and scope of his employment" when he did so.
It is contended by the Attorney General, on behalf of the defendant, that defendant was entitled to such an instruction under the Oregon Tort Claims Act. It is true that a police officer who acts "within the scope of [his] employment or duties" is not subject to liability under the Oregon Tort Claims Act for punitive damages by reason of ORS 30.270(2), at least when engaged in the performance of a "discretionary function or duty."[6]
If, however, this defendant ate most of the sturgeon and at that time was not acting within the course and scope of his employment, as the jury was entitled to find from the evidence of this case, he would then be subject to punitive damages on the same basis as any other person who commits an act of conversion. This court has held that punitive damages may properly be awarded by a jury in actions for conversion when the circumstances are sufficiently aggravated. See, e.g., Allen v. Allen, 275 Or. 471, 481-82, 551 P.2d 459 (1976); Lee v. Wood Products Credit Union, 275 Or. 445, 449-50, 551 P.2d 446 (1976); Lewis v. Devils Lake Rock Crushing Co., 274 Or. 293, 300-301, 545 P.2d 1374 (1976).
Because the trial court erred in failing to give two of defendant's requested instructions, *253 this case must be remanded to it for a new trial.
Reversed and remanded.
NOTES
[1] ORS 496.620, relied upon by the Court of Appeals, provides:

"No person authorized to enforce the wildlife laws shall suffer any civil liability for the enforcement or attempted enforcement of any provisions of the wildlife laws or for the exercise or attempted exercise of any of the duties or privileges granted to or imposed by law upon the commission or such persons."
ORS 30.265(3)(c), also referred to by the Court of Appeals, provides:
"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:
"* * *
"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."
[2] Under English common law, a sturgeon was a "royal fish" which belonged to the king and no subject could take such a fish without a royal grant. Arnold v. Mundy, 6 N.J.L. 1, 76 (1821).
[3] But see Restatement (Second) of Torts §§ 223 and 226, comment b.
[4] Because of the basis on which we decide this case we need not consider plaintiff's contention that ORS 496.620 and 30.265(3)(c) only provide immunity to an officer who acts in "good faith" and that if those statutes were construed as held by the Court of Appeals they would be unconstitutional, in reliance upon Butz v. Economou, 438 U.S. 478, 498, 98 S.Ct. 2894, 2906, 57 L.Ed.2d 895, 910-11 (1978).
[5] The substance of the rule as stated in the first requested instruction was also urged by defendant as a further ground in support of his motion for a directed verdict.
[6] ORS 30.270(2) provides:

"No award for damages on any [claim within the scope of ORS 30.260 to 30.300] shall include punitive damages * * *."