Argued and submitted July 14, affirmed August 18, 1980

DISNEY-MARINE CO., INC., et al,
*Appellants,*
*v.*
WEBB,
*Respondent.*

(No. 25076, CA 16297)

615 P2d 1125

John H. Heald, Portland, argued the cause and filed the brief for appellants. With him on the brief was Fellows, McCarthy, Zikes & Kayser, P.C., Portland.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiffs Disney-Marine Co., Inc., an Oregon corporation, and Jack Price and Valerie Price, officers of the corporation, brought an action at law in trespass and a suit to enjoin repetition of the trespass against defendant Webb, the Fire Chief of the City of Vernonia.[1] From the trial court's judgment order granting defendant's motion for summary judgment, plaintiffs appeal. We affirm.

The first cause of action in plaintiffs' amended complaint alleges that defendant, maliciously and in wanton disregard of plaintiffs' rights, entered plaintiffs' movie theater at an unreasonable hour "for the purpose of disrupting the showing of a movie, disturbing Plaintiffs' customers, and damaging Plaintiffs' business," under the pretense of inspecting the theater for fire hazards. General and special damages are alleged. The cause of suit alleges that despite plaintiffs' demands that defendant cease entering the theater during the showing of movies, defendant has continued and threatened to continue to enter the theater at such times. Plaintiffs prayed in this cause of suit for a permanent injunction restraining defendant from entering the theater during the showing of regularly scheduled movies.

Defendant moved for summary judgment on the ground that he is immune under ORS 30.265(3)(c)[2]

---

[1] Plaintiffs' amended complaint also alleged a cause of action for interference with business relations. Plaintiffs have not assigned error to the trial court's granting of defendant's motion for summary judgment on this cause of action. Plaintiffs have argued no violation of their constitutional rights.

[2] ORS 30.265(3)(c) provides:

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

\* \* \* \* \*

from liability for the acts alleged, since they were performed by defendant while acting within the scope of his authority as Fire Chief and were discretionary functions.[3] In an affidavit in support of his motion, defendant stated in part that in response to a complaint that one of the fire exits at plaintiffs' theater was blocked, defendant, acting in his capacity as Fire Chief, went to the theater and inspected a fire exit. He found that exit barred by a two-by-four board dropped into two metal slots, and told plaintiff Jack Price to remove the board. None of the opposing affidavits controvert the statement that defendant inspected the exit and told Mr. Price to remedy the violation. An additional supporting affidavit, by John Bornstedt, the Fire Prevention Supervisor employed by the State Fire Marshal, stated:

> "It is usual and customary to inspect movie theatres and other places of public assembly, such as gymnasiums, during hours when the premises are actually in use by the public. The practice of conducting night inspections of theatres or the like is necessary because this is the only time during which it can be ascertained whether or not fire exits are blocked or whether there is overcrowding. Oftentimes these inspections are following a complaint of blocked exits or overcrowding. Since it would not necessarily be a fire violation to chain or block theatre exit doors while the theatre was not in operation, it is a common practice to inspect a theatre during the showing of a movie, when the theatre is actually occupied by the public."

These statements were not controverted by any of the affidavits in opposition to the motion.

---

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

[3] If there are no disputed facts material to the issue of immunity, that issue may properly be raised and resolved on a motion for summary judgment. *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 469, 582 P2d 443 (1978).

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Former ORS 18.105(3).[4] Plaintiffs contend that from the affidavits supporting and opposing the motion for summary judgment there appears a factual dispute concerning defendant's motivation in entering plaintiffs' theater. That issue of fact is material, plaintiffs argue, to a determination of whether defendant was acting within the scope of his authority.[5]

■ The appellate courts of this state have previously rejected the contention that an officer's malice is

---

[4] This statute was in effect throughout the proceedings below. ORCP Rule 47C, which became effective January 1, 1980, imposes the same requirements.

[5] In Jack Price's affidavit in opposition to the motion for summary judgment, he averred that:

> "DONALD WEBB and his assistant then went behind a curtain which covers one of the exits from the building. They were behind the curtain for a period long enough to arouse the curiosity of various patrons who began to get up and go behind the curtain.

> "At this point, I went behind the curtain and asked DONALD WEBB what he was doing. DONALD WEBB advised me that the premises were a fire trap and that he was going to shut down the premises. I asked both men to leave and they would not leave. I asked both men to turn off their flashlights, and at that point, DONALD WEBB struck me several times with his fists.

> "I then went into the lobby of the theatre at DONALD WEBB's instruction. DONALD WEBB and his assistant repeatedly challenged me to come outside and fight. I refused to go outside and fight, and eventually, DONALD WEBB and his assistant left."

Plaintiffs' complaint alleges trespass, not battery, and plaintiffs contend only that the episode described in the affidavit demonstrates defendant's malicious intent. Thus, this case does not present the question whether defendant, if he struck Jack Price with his fists, was acting within the scope of his duties as Fire Chief. Cf. *Dickens v. DeBolt*, 288 Or 3, 602 P2d 246 (1979) (ORS 30.265(3)(c) does not protect state police officer from liability for conversion for eating sturgeon seized while officer was enforcing state wildlife laws, since when officer "eats the evidence" he is not acting "within the scope of [his] employment or duties" within the meaning of the statute.)

material to the issue of immunity.[6] For instance, in *Watts v. Gerking et al,* 111 Or 641, 222 P 318, *rev'd on rehearing,* 228 P 135 (1924), plaintiff brought an action for malicious prosecution on a criminal charge against, among others, the district attorney. The court sustained the district attorney's demurrer, holding that he was immune from liability to plaintiff for acts done in his official capacity, regardless of allegations in the complaint that the district attorney's actions were motivated by malice. *Cf. Wright v. White,* 166 Or 136, 110 P2d 948 (1941) (Adjutant General immune from liability for malicious prosecution when acting in line of duty and within scope of authority, regardless of allegations of malice). In *Chemical Waste Stor. v. Day/Mann,* 14 Or App 515, 513 P2d 1193, *rev den* (1973), the plaintiff brought an action against the defendants to recover damages caused by the defendants' order prohibiting the plaintiff from transporting chemical residues to its disposal site. The complaint alleged that the defendants issued the order "wickedly, wantonly and maliciously," and that the defendants acted outside the scope of their authority in issuing the order. In ruling that the order was within the defendants' authority, the court did not mention the allegations of malice. In *Donahue v. Bowers/Steward,* 19 Or App 50, 526 P2d 616, *rev den* (1974), the plaintiff, who brought an action against two public officials for interference with his employment, contended that the common law doctrine of immunity for public officials[7] does not apply when their acts were motivated by malice. The court, in sustaining defendants' demurrers, held:

---

[6] In *Dickens v. DeBolt, supra,* 288 Or at 12 n.4, the court declined to rule on the plaintiff's contention that ORS 30.265(3)(c) only provides immunity to an officer who acts in "good faith."

[7] The common law and statutory discretionary act exceptions to public employe liability are identical. *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 472 n.6, 582 P2d 443 (1978).

" * * * A public officer or employe who is performing a discretionary function and is acting within the scope of his authority is immune from personal liability for his act, notwithstanding that such act was done, as alleged here, wilfully and without justification or cause and with intent to injure and distress the plaintiff." 19 Or App at 58.

■ We conclude that the appropriate inquiries here are whether, without regard to any alleged malicious intent, defendant had authority to inspect the theater and whether the inspection was a discretionary function.

■ Defendant's authority to inspect buildings for fire hazards is established by statute and municipal ordinance. As Fire Chief of the City of Vernonia, defendant is an *ex officio* assistant to the State Fire Marshal, ORS 476.060(1). ORS 476.070(2) provides:

"The State Fire Marshal, his deputies or assistants, or any of them, may:
* * * * *

"(2) For just cause and for the purpose of examination, enter, at all reasonable hours, in and upon all buildings and premises within their jurisdiction."

Vernonia Municipal Ordinance No. 520 provides:

"The fire prevention bureau shall inspect, as often as may be necessary, all buildings and premises, including such other hazards or appliances as the chief may designate for the purpose of ascertaining and causing to be corrected any conditions which would reasonably tend to cause fire or contribute to its spread, or any violation of the purpose or provisions of this code and of any other law or standard affecting fire safety."

■ These provisions authorize defendant to enter plaintiffs' theater[8] to investigate a complaint that a

---

[8] There is no issue of defendant's jurisdiction over plaintiffs' theater.

Defendant's authority to perform such inspections is confined to entry of premises "at all reasonable hours." ORS 476.070(2). We address this requirement below in our discussion of whether the inspection was a discretionary function.

fire exit is blocked. Since from the affidavits on file there is no dispute that defendant did just that, we find that defendant was "acting within the scope of [his] employment or duties," ORS 30.265(3).

■ In determining whether defendant was performing a discretionary function, we must first identify the function defendant was performing. *Dizick v. Umpqua Community College,* 287 Or 303, 599 P2d 444 (1979); *Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979); *J. Gregcin, Inc. v. City of Dayton,* 39 Or App 743, 593 P2d 1231, *remanded on other grounds,* 287 Or 709, 601 P2d 1254 (1979). Plaintiffs argue that the function performed here was the actual inspection, not the decision to inspect, citing Vernonia Municipal Ordinance No. 520, *supra,* for the proposition that fire inspections are mandatory. Therefore, defendant's only duty in conducting the inspection, plaintiffs contend, is checking the fire exit in the theater for compliance with fire code requirements. Plaintiffs contend, under *Brennen v. City of Eugene, supra,* the function is ministerial.[9] We disagree. The city ordinance cited by plaintiffs provides that the "fire prevention bureau shall inspect, *as often as may be necessary,* all buildings and premises, including such other hazards or appliances as the chief may designate * * * ." (Emphasis added.) This provision does not mandate inspections of all buildings on a rigid schedule. Instead, the ordinance allows the Fire Chief latitude in choosing which buildings to inspect and

---

[9] In *Brennen v. City of Eugene,* a city employe issued a license to a company, Terminal, to operate a taxicab service although Terminal's application disclosed that the company did not carry the amount of liability insurance required by a city ordinance. The plaintiff was injured while riding as a paying passenger in a Terminal taxi, brought a negligence action against Terminal, and recovered a judgment in excess of Terminal's coverage, although within the limits of coverage mandated by the ordinance. Plaintiff then brought an action against the City of Eugene for negligent issuance of the license. The court held that where the city employe's only duty in checking the application for the license was to compare the facts in the application with the requirements of the ordinance, that duty was ministerial.

how often to conduct inspections. Further, in authorizing defendant to perform inspections "at all reasonable hours," ORS 476.070(2) grants defendant flexibility to determine reasonable times for inspections. Thus, the function that must be analyzed here is not merely the performance of the inspection and determination of a violation, but the decision to inspect a particular building at a particular time.

The Supreme Court attempted to outline the characteristics of a "discretionary function" in *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970):

"The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." 256 Or at 506.

In *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978), the court again attempted to describe "discretion":

"* * * But not every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer. Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' *Smith v. Cooper,* 256 Or 485, 502, 475 P2d 78, 45 ALR3d 857 (1979), *quoting Dalehite v. United States,* 346 US 15, 36 (1953), or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued,' *Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664 (1929). It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action, *Dickinson v. Davis,* 277 Or 665, 673,

561 P2d 1019 (1977). In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment." 282 Or at 436-37.

The decision whether to inspect a building at a certain time may involve an assessment by defendant of the availability of funds and personnel and a ranking of priorities in his performance of the duties of Fire Chief. Whether an hour is "reasonable" for inspection involves not simply whether persons of ordinary sensibilities might be disturbed or offended at that hour and whether businesses might be disrupted. The reasonableness of the hour also may depend on defendant's evaluation of the urgency of a violation complained of and whether the hour is one at which a violation may be ascertained, such as the blocking of a fire exit while a theater is occupied. The decision on how often it is "necessary" to inspect a specific building calls for a judgment on the nature and permanency of the violation, the cooperation of the violators, and comparison of the relative effectiveness and burden of repeated inspections.

■■ Under the criteria outlined above, defendant's decision to inspect plaintiffs' theater was a discretionary function. The inspection was within the scope of defendant's duties. Therefore, defendant was immune from liability under the facts here, and the trial court properly granted defendant's motion for summary judgment.

Affirmed.