144 April 10, 2014 No. 18

IN THE SUPREME COURT OF THE
STATE OF OREGON

CHESTER C. WESTFALL,
*Respondent on Review,*

*v.*

STATE OF OREGON,
by and through the actions of its agency
the Oregon Department of Corrections,
*Petitioner on Review.*

(CC 07C23164; CA A140772; SC S060416)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 8, 2013.

Erin C. Lagesen, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Richard L. Cowan, Salem, argued the cause and filed the brief for respondent on review.

LINDER, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

_____
* Appeal from Marion County Circuit Court, Claudia M. Burton, Judge. 247 Or App 384, 271 P3d 116 (2011).

**LINDER, J.**

Plaintiff brought a civil action against the State of Oregon, alleging that the Department of Corrections had kept him in prison longer than his lawful term of incarceration. Specifically, plaintiff alleged that the department had extended his prison term unlawfully by having a sentence run consecutively to another sentence imposed the same day, rather than running consecutive to a sentence that had been imposed previously. The state moved for summary judgment, asserting that it was entitled to discretionary immunity under ORS 30.265(6)(c) because the department's written policies required its employees to treat the sentence as consecutive to other sentences imposed the same day.[1] The trial court agreed and granted summary judgment for the state. The Court of Appeals reversed on appeal, concluding that any discretionary immunity that applies to the department's decision to adopt the written policies did not also apply to those employees who carried out the policies. *Westfall v. Dept. of Corrections*, 247 Or App 384, 392-93, 271 P3d 116 (2011). On review, we conclude that the Court of Appeals erred in its analysis, and we reject plaintiff's alternative argument that the actions of the department and its employees are not of a kind protected by discretionary immunity. We remand, however, for the Court of Appeals to consider other arguments by plaintiff that the Court of Appeals did not address.

## I.   BACKGROUND, FACTS, AND PROCEDURAL POSTURE

On review, we examine the trial court's grant of summary judgment to determine whether there was no genuine issue of material fact such that the state was entitled

---

[1] ORS 30.265(6)(c) provides, in part:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties *** are immune from liability for:

"*****

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

In 2011, the legislature amended ORS 30.265. Or Laws 2011, ch 270, § 1. Those amendments do not affect our analysis. They did, however, renumber the relevant subsection from ORS 30.265(3)(c) to ORS 30.265(6)(c). For simplicity, we will refer to the statute throughout this opinion by its current numbering.

to judgment as a matter of law. *See* ORCP 47 C; *[Hughes v. Wilson](#)*, 345 Or 491, 500-01, 199 P3d 305 (2008). In this case, the facts are essentially undisputed. Before we turn to the particular events at issue, however, we first describe in a general way how prison terms are calculated, because doing so is helpful context for the particular calculation made in this case.

A.    *Overview of Sentences and Sentence Calculation*

As noted, this case arose because plaintiff disputed the department's calculation of the amount of time that plaintiff was required to serve in prison as a result of multiple sentences. For that purpose, there are two different types of sentences: concurrent and consecutive. *See* ORS 137.123 (so providing).[2] Concurrent sentences are served at the same time, while consecutive sentences are served in sequence, one following the other. *See generally Black's Law Dictionary* 1485 (9th ed 2009) (defining "concurrent sentences" and "consecutive sentences"). By statute, sentences are concurrent unless the sentencing court specifically orders otherwise. ORS 137.123(1).

If a prisoner has multiple sentences that are all concurrent, then the length of time that the prisoner spends in prison will essentially be determined by the longest sentence. That is so because, in effect, all the sentences are running at the same time, so the shorter sentences will have been served before the final release date.

The trial court may, however, impose a sentence consecutive to any combination of existing sentences. *See* ORS 137.123(1) (sentence may be "concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed"). Thus, a court may order a particular sentence to be served consecutive to some or all prior sentences, concurrent with some or all prior sentences,

_____

[2]  ORS 137.123(1) provides:

"A sentence imposed by the court may be made concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed upon the same defendant. The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences."

or both consecutive to some sentences and concurrent with others. No law prescribes the precise terminology that a court must use in imposing a consecutive sentence, however. As a result, courts may—and in fact do—use widely varying terminology to describe the extent to which a particular sentence is consecutive, concurrent, or both.

The legislature has entrusted to the Department of Corrections (at least in the first instance) the task of calculating a prisoner's prison term based on the variable text that trial courts often use in their judgments to impose concurrent and consecutive sentences. ORS 137.320(3).[3] In 2004, the department promulgated an extensive written policy directing how a prison term analyst (PTA) should calculate a prisoner's term of incarceration. That policy contains two sections relevant to this case. The first section, which addresses "facially invalid and/or problem judgments," provides that the PTA will make all calculations based on the judgment alone, although in some circumstances the PTA must bring apparent problems with the judgment to the attention of a supervisor or the court. Specifically, the policy states:

"Occasionally, courts issue judgments that do not comply with statutory requirements. If a PTA becomes aware of a problem with a judgment, particularly a problem that might result in a violation of the inmate's rights or a deprivation of a liberty interest of the inmate, the PTA must immediately bring the problem to the attention of a leadworker or technician.

"Such problems include clerical mistakes or oversights (including typographical errors) as well as substantive errors in the application of sentencing laws. Where an error in a judgment appears to be a clerical error, the PTA will contact the court for clarification and to allow the court the

---

[3] ORS 137.320(3) provides:

"Upon receipt of the information described in subsection (1) or (2) of this section, the Department of Corrections shall establish a case file and compute the defendant's sentence in accordance with the provisions of ORS 137.370."

The cross-referenced subsections, ORS 137.320(1) and (2), provide that the sheriff will deliver a defendant to the department for its custody, together with copies of the relevant entries of judgment and a statement or statements about any time already served.

opportunity to correct the error. The PTA may contact the court by telephone, but will follow-up with written confirmation or notification to the court of the problem.

"The PTA must also request that the court send an amended judgment. The PTA must not rely solely on verbal instructions regarding changes to a written judgment.

"**Note:** In order for [the department] to accept a judgment as valid, the judgment must be received from an official source, such as a court, District Attorney, Board of Parole and Post Prison Supervision (BPPPS), community corrections office, etc. [The department] may not make adjustments to inmate's sentences based on a judgment received from a defense attorney, inmate, or other unofficial source. Additionally, [the department] **may not** accept letters or verbal instructions from the court, District Attorney, or other sources for use in sentence calculation. [The department] is bound by the judgment and must receive amended judgments before any changes can occur."

(Emphases in original.)

The second relevant part of the policy describes various ways in which a judgment of conviction and sentence could describe a consecutive sentence and directs the PTA how to calculate the term of imprisonment. The policy states:

"1.   'Consecutive to Sentences Previously Imposed'

"A consecutive sentence begins on the date of completion of the preceding sentence in the sequence of sentences. If the court orders that a sentence be served 'consecutive to sentences previously imposed,' the sentence will be set up as consecutive to any other sentences imposed the same date or on an earlier date. (Sentences imposed the same date **will be** considered as 'previously imposed.') * * *

"2.   'Consecutive to Sentences Simultaneously Imposed'

"If the court orders that a sentence be served 'consecutive to sentences simultaneously imposed,' the sentence will be set up as consecutive to any other sentences imposed the same date. (Sentences imposed on an earlier date **will not** be considered 'simultaneously imposed.')

"3.    'Consecutive to Sentences Currently Being Served'

"If the court orders that a sentence be served 'consecutive to sentences currently being served,' the sentence will be set up as consecutive to any other sentences imposed the same date or on an earlier date. (Sentences imposed the same date **will be** considered as [']currently serving.')"

(Emphases in original.)[4]

The policy also provides that a sentence that is consecutive to more than one sentence will be calculated to begin when the last of those other sentences ends:

"If a sentence is consecutive to more than one other sentence, the PTA will determine which of the other sentences will be completed last and enter the consecutive sentence[] as CS [consecutive] to that sentence."

B.    *Facts of Plaintiff's Case*

With that background, we turn to the particular facts of plaintiff's sentences. Preliminarily, we note that plaintiff's sentences formed a complicated mosaic of at least 19 different sentences arising from seven criminal cases heard in four counties. Because a number of those sentences did not bear on the proper calculation of plaintiff's term of imprisonment, we will omit any discussion of them here.

Plaintiff was serving a prison sentence when he escaped from custody. In July 2001, after he was recaptured, the Marion County Circuit Court sentenced plaintiff to a 20-month consecutive sentence for second-degree escape II. Because the sentence was "consecutive to any sentence previously imposed," plaintiff's prison term would end when that 20-month sentence was served.

In September 2002, plaintiff received six prison sentences in a Josephine County Circuit Court case. Those sentences are the essential source of plaintiff's complaint here.

_____

[4] The policy goes on to address six other possibilities that have to do with the substance of the sentence, rather than the particular phrasing used by the trial court in imposing the sentence. Those additional possibilities are: (1) sentencing guideline sentences consecutive to a matrix sentence; (2) matrix sentences consecutive to a matrix sentence; (3) sentences consecutive to a parole revocation; (4) sentences consecutive to a post-prison supervision revocation; (5) matrix sentences consecutive to a sentencing guideline sentence; and (6) matrix sentences consecutive to an out-of-state sentence.

Four of the sentences were concurrent, and two were consecutive. Plaintiff received 12-month concurrent sentences on Counts 14 and 22, and 13-month concurrent sentences on Counts 10 and 46. On Count 49, however, the judgment provided that the trial court sentenced plaintiff to 26 months "consecutive to all previously imposed sentences." Finally, on Count 5 the trial court sentenced plaintiff to 10 months consecutive to the sentence imposed in Count 49.

At that time, then, plaintiff's term of imprisonment would have ended when he completed three consecutive sentences sequentially: The 20-month Marion County sentence, the 26-month sentence for Josephine County Count 49, and the 10-month sentence for Josephine County Count 5. All plaintiff's other outstanding concurrent sentences—including the four concurrent sentences in Josephine County—had no effect on the term of imprisonment, at least at that time. They were running concurrently with the 20-month Marion County sentence and would have expired before the Marion County sentence was completed.

In 2005, however, the 20-month Marion County escape sentence was vacated and remanded. On resentencing, the new sentence in that case was so reduced that plaintiff had already completed that sentence.

The department thus had to recalculate plaintiff's remaining term of imprisonment. In particular, the department needed to determine which sentence would, when it expired, trigger the beginning of plaintiff's 26-month consecutive sentence for Josephine County Count 49. The department's employees interpreted the department's written policy to dictate that the words "consecutive to all previously imposed sentences" in the Josephine County judgment for Count 49 meant consecutive not only to sentences imposed previously, but also consecutive to sentences imposed the same day. Because the longest outstanding remaining sentences that met those criteria were the two 13-month sentences on Counts 10 and 46 imposed by the Josephine County Circuit Court on the same day, the department recalculated plaintiff's term of imprisonment so that the 26-month sentence on Count 49 would start when the 13-month sentences on Counts 10 and 46 expired. Thus,

plaintiff would serve a total of 49 months on his Josephine County sentences: 13 months on Counts 10 and 46, followed by 26 months on Count 49, followed by 10 months on Count 5 (with the two 12-month sentences in Counts 14 and 22 running concurrently).

When plaintiff learned of the department's recalculation, he objected. He asserted that the Josephine County Circuit Court had not intended the 26-month sentence in Count 49 to run consecutively to any sentence entered that same day. The court, he maintained, had intended the sentence to be consecutive to only the sentences imposed in earlier cases. Plaintiff noted that his plea agreement in the Josephine County case specifically stated that he would only serve a total of 36 months for the sentences imposed on that case.[5] Plaintiff thus contended that the Josephine County Circuit Court had intended the total time served in that case to be the 26-month consecutive sentence on Count 49 plus the 10-month consecutive sentence in Count 5, with all the other sentences being concurrent.

The department refused to change its calculations. By a written memo, a PTA informed plaintiff that the department was bound by the written text of the Josephine County judgment and that plaintiff would need to seek an amended judgment before the department could take action:

> "Unfortunately I cannot structure your sentences based on the plea agreement. The wording in the plea agreement [for Count 49] states the sentence would be 'consecutive to any other sentence.' This is the same as the wording in the judgment. I see the intent of the court was to make your sentence a total of 36 months. If you will note in the line [of the plea agreement] above *** it states that the court is not required to accept or comply with any agreement between [plaintiff] and the District Attorney.
>
> "I must abide by the wording in the judgment. Until an amended judgment is received from the court your sentences will remain as they are[.]"

---

[5] The specific text from the plea agreement states: "The effective time of incarceration would be 36 months consecutive to any time or sentence I am currently serving."

Before receiving that memo, however, plaintiff had already filed a formal motion with the Josephine County Circuit Court asking it to amend its judgment to indicate that the 26-month sentence for Count 49 would not be consecutive to the other sentences imposed in that case on the same day.[6] That motion was still pending when the department advised plaintiff to seek an amended judgment from the circuit court. Plaintiff sent a copy of the department's memo to the circuit court. Some time later, the court denied the motion to amend the judgment without explanation. The department released plaintiff in December 2005, at which point plaintiff had served his prison term as calculated by the department.

## C.  *Plaintiff's Action Against the State*

In December 2007, plaintiff filed a complaint against the state. In it, he alleged two causes of action: negligence (in the calculation of his sentence) and false imprisonment. He maintained that the state, by interpreting his Josephine County sentences to require him to serve 49 rather than 36 months, had unlawfully imprisoned him for an extra 13 months.

After answering the complaint, the state moved for summary judgment. It asserted that the department's employees who computed plaintiff's total sentence had correctly applied the department's written policy and the choices reflected in the written policy were entitled to discretionary immunity under ORS 30.265(6)(c).[7]

Plaintiff opposed the motion. He argued, among other points, that the PTA's decision about how to calculate the

---

[6] Specifically, plaintiff asked the court to amend the judgment to state that the sentence was "'consecutive to all previously imposed consecutive sentences,' or some other similar language."

[7] The state added that, even if one accepted plaintiff's theory of how the Josephine County sentences should have been applied, he had not been unlawfully held for 13 months, but only for two. In July 2002, plaintiff had been convicted in Douglas County and sentenced to three 13-month concurrent sentences. If the 26-month sentence for Josephine County Count 49 should have run consecutively to only sentences entered in previous cases, the state contended, then the 26-month sentence would have begun when the Douglas County sentences ended. The net result would have been that plaintiff would have been released on November 9, 2005, rather than his actual release date of December 30, 2005.

sentence was a ministerial one, not the sort of exercise of discretion entitled to immunity. Plaintiff also asserted that the department's policy could not override the Josephine County Circuit Court's intent to limit the Josephine County sentences to a total of 36 months.

The trial court agreed with the state that discretionary immunity applied to plaintiff's negligence claim, but it asked for additional briefing as to whether discretionary immunity might also apply to plaintiff's claim in intentional tort for false imprisonment. After receiving that additional briefing, the trial court concluded that discretionary immunity also applied to intentional torts, and the court granted summary judgment for the state.

D.   *Appeal to the Court of Appeals*

Plaintiff appealed to the Court of Appeals. On appeal, plaintiff did not renew his contention that the department's policy could not override the Josephine County Circuit Court's alleged intent. Instead, plaintiff assumed that the policy itself was protected by discretionary immunity, but he argued that the policy required the department's employees to make decisions about how to apply the policy that were not protected by that immunity. Specifically, plaintiff maintained that the policy required the department's employees to make a choice: A PTA could decide to have the sentence in Count 49 run consecutively *either* to sentences imposed previously *or* to other sentences imposed the same day. The PTA's choice to have the sentence run consecutive to sentences imposed the same day, plaintiff argued, was not the sort of decision that qualified for discretionary immunity. Plaintiff also alternatively asserted that (1) discretionary immunity did not apply to intentional torts such as his false imprisonment claim; and (2) the policy obligated the department's employees to notify a supervisor or the Josephine County Circuit Court about his questions regarding the judgment. The state renewed its argument that the department's employees had followed the written policy and that the written policy was entitled to discretionary immunity as to all claims.

The Court of Appeals ruled for plaintiff on a broader theory than plaintiff had advanced. The court noted that,

while the department may have been exercising discretion when it established the written policy, the department's employees who carried it out (the PTAs) were not the ones who had adopted the policy. The Court of Appeals did not accept plaintiff's position that the policy allowed the PTAs to choose whether the consecutive sentence would run consecutive to previous sentences or same-day sentences. Instead, the court held that discretionary immunity did not protect the department's employees who carried out the departmental policy, even if the employees had no choice but to follow the policy and even if the policy itself was subject to discretionary immunity:

> "Although, as the state argues, the adoption of the [department's] policy may reflect a choice among competing policy objectives by individuals within the agency to whom the responsibility to make such a choice has been delegated, the [department's] employees implementing that policy were *not* delegated similar responsibility; the policy choice had been made for them through the instructions in the [department's] policy that required them to make certain decisions when confronted with particular language in a judgment. Put differently, even if the employees' sentence-restructuring decisions in this case were made in perfect conformity with the [department's] sentencing policy, those decisions were not the product of policy choices by the employees."

*Westfall*, 247 Or App at 392-93 (emphasis in original). The Court of Appeals summarized its reasoning by stating, "[W]hen the [department's] employees implemented the sentencing policy, they made routine decisions in the course of their everyday activities—*viz*., computing an inmate's prison sentence—that were not choices among competing policy objectives," and so those "decisions" were not entitled to discretionary immunity. *Id.* at 393.

We allowed the state's petition for review. On review, the state contends that the Court of Appeals decision wrongly limited the protection provided by discretionary immunity. The trial court, the state argues, correctly held that discretionary immunity extends to the department's employees when they interpret a trial court judgment of

conviction in accordance with the department's discretionary policy for doing so.

For his part, plaintiff does not defend the rationale that the Court of Appeals used to decide the case. Instead, he renews his argument that the policy gave the department's employees a choice and that choice was not entitled to discretionary immunity. We should, plaintiff effectively contends, affirm the Court of Appeals on other grounds.

## II.   DISCUSSION

Preliminarily, we note that the issues before us do not require us to determine whether the department correctly calculated plaintiff's prison term based on the Josephine County judgment of conviction. Because the trial court granted summary judgment for the state based on its claim of discretionary immunity, we assume for purposes of analysis that the department's policy did result in a prison term calculation that was inconsistent with what the Josephine County Circuit Court had intended by the sentence it imposed. *See Garrison v. Deschutes County*, 334 Or 264, 272, 48 P3d 807 (2002) (on review of grant of summary judgment to county for discretionary immunity, this court must "assume that the county, were it a private party, could have been found liable to plaintiffs for their injuries"). We also assume, because plaintiff does not argue otherwise, that the department's adoption of its policy was a discretionary choice that is entitled to discretionary immunity. We must decide only whether, assuming that the policy that the department adopted was protected by discretionary immunity, discretionary immunity extended as well to the PTA's calculation of plaintiff's prison term.

With that, we turn to the doctrine of discretionary immunity. Discretionary immunity has its origins in the common law. *See Smith v. Cooper*, 256 Or 485, 494, 475 P2d 78 (1970) ("this immunity for public employees is court made" and citing cases). Today, however, discretionary immunity is codified by statute. That statute, ORS 30.265(6)(c), is part of the Oregon Tort Claims Act (OTCA).

The OTCA generally makes governmental bodies subject to liability for the torts of its employees. ORS 30.265(1). But the OTCA also creates certain exceptions to

that liability. The exception at issue here, ORS 30.265(6)(c), provides, in part:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:
>
> "* * * * *
>
> "(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

The legislature did not define the term "discretionary function or duty," and this court has struggled with the concept over the years. *See Hughes*, 345 Or at 495-96 (noting tensions inherent in ORS 30.265(6)(c)); *Smith*, 256 Or at 495-96 (looking to common law for guidance on meaning of term). The result of that struggle, however, is an extensive body of case law refining the concepts. *See Garrison*, 334 Or at 273 (citing cases); *see Stevenson v. State of Oregon*, 290 Or 3, 8, 619 P2d 247 (1980) (noting that court's decision in *Smith* regarding common-law discretionary immunity had been "mindful that although the case was not governed by the [OTCA] our decision would be important to the future construction of the statute"). Briefly, the decision of a governmental official, employee, or body is entitled to discretionary immunity if a governmental person or entity made a policy choice among alternatives, with the authority to make that choice. *Garrison*, 334 Or at 273-75; *Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 89-90, 92, 843 P2d 415 (1992); *see McBride v. Magnuson*, 282 Or 433, 436, 578 P2d 1259 (1978) (noting that "not every exercise of judgment and choice is the exercise of discretion"; immunity applies to policy judgments made by an official to whom responsibility has been delegated). Discretionary immunity does not apply, however, to "routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action." *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990); *see Garrison*, 334 Or at 273-74; *Mosley*, 315 Or at 89 (both quoting *Lowrimore*).

In this case, the department made a policy decision, reflected in its written policy, as to how it would interpret

judgments of conviction in carrying out its statutory duty to determine the period of confinement for prisoners lawfully sentenced by the courts of Oregon. The parties have effectively assumed that the department's written policy was itself subject to discretionary immunity. That is, no party has suggested that the department's written policy was not a policy choice among alternatives or that the department lacked authority to make that policy choice

Instead, the parties present us with two different issues on review. The state challenges the reasoning that underlies the decision of the Court of Appeals. It contends that that court erred in concluding that discretionary immunity protected only the department's decision to adopt the written policy itself and not the action of the employees who put that policy into effect. Plaintiff presents a second issue, offering an alternative reason why we should affirm the ultimate decision of the Court of Appeals, even if we reject its reasoning. Specifically, plaintiff renews his contention that the particular policy adopted by the department gave the PTAs a choice, one that was sufficiently ministerial as to not be protected by discretionary immunity.

We begin with the state's challenge to the reasoning of the Court of Appeals, because its analysis is independent of the terms of the particular policy at issue. As we earlier outlined, we understand the Court of Appeals to have reasoned that the only matter of consequence was that the departmental official who adopted the department's written policy was not the person who applied it to calculate this particular sentence. The actions of the department's employees were not subject to discretionary immunity, the court held, even if the employees were compelled by the terms of the written policy to act in the way that they did. The particular contents of the department's written policy thus were irrelevant, and so the court did not consider whether the policy required the department's employees to make a nonimmune choice, as plaintiff asserts.

A.   *When Discretionary Immunity Applies to Employees Who Apply Policy*

In this case, the department established a general policy that, for purposes of our analysis in this case,

we assume to be protected by discretionary immunity. The department's employees then apply that general policy to particular cases by calculating prison terms for individual inmates. When employees are required to apply an otherwise immune governmental policy to a particular case, there are four possible factual scenarios that may affect whether the employee's actions are protected by discretionary immunity.

The first scenario is where the immune policy does not express a completed thought on how a particular case should be resolved, instead contemplating that the employee will make additional choices within the confines of the policy decisions. In that scenario, liability will depend on whether the choice made by the employee separately qualifies for discretionary immunity. *See Stevenson*, 290 Or at 15 (contrasting hypothetical discretionary decision as to which repairs to make in light of budget constraints with the "negligent performance by its employees of certain tasks related to such a decision—for example, determining the extent of the actual disrepair in each section and the kinds of hazards that existed as a result"); *McBride*, 282 Or at 436 ("Many officers or employees carrying out the functions entrusted to them by others must frequently assess facts and choose how to act or not to act upon them. But not every exercise of judgment and choice is the exercise of discretion."); *Smith*, 256 Or at 511-12 (in determining whether discretionary immunity applies, allegation of improper maintenance of roadway may present different question from allegations relating to planning and design of roadway). Plaintiff contends that the first scenario applies here: The department's written policy, plaintiff asserts, still required its employees to choose which sentence would be considered the trigger for the consecutive sentence in Count 49. If plaintiff is correct, then we must separately examine the choice made by the department's employees to determine whether that choice was protected by discretionary immunity. As noted, however, that was not the rationale for the Court of Appeals' holding; instead, that court effectively assumed that it was irrelevant whether the policy required the department's employees to make additional choices. Accordingly, we will return to plaintiff's alternative argument only after considering the Court of Appeals' rationale.

The second scenario arises when the employee, for whatever reason, wrongly fails to apply an otherwise immune policy to a particular case. In that scenario, the actions of the employee generally would not be protected by discretionary immunity (unless the employee's decision not to apply the policy itself somehow separately qualified as a discretionary policy choice entitled to immunity). *See Stevenson*, 290 Or at 14-15 (contrasting discretionary policy choice by officials as to where to install safety measures, which likely would be subject to discretionary immunity, with employee's failure to install those safety measures because of "a failure to determine that those conditions did in fact exist at that location," which likely would not be subject to discretionary immunity); *Brennen v. City of Eugene*, 285 Or 401, 415-16, 591 P2d 719 (1979) (discretionary immunity did not apply to city employee's decision to issue license to taxi company that lacked amount of liability insurance required by municipal ordinance; "the language [in the ordinance] relating to minimum liability insurance is clearly mandatory, and we do not believe the language, taken as a whole, vested the [employee] with discretion to issue a license to an applicant who did not meet those requirements"). No party asserts that the second scenario applies here.

The third scenario is simply a variant of the second: An employee applies an otherwise immune policy to inapplicable circumstances. For essentially the same reasons as in the second scenario, the actions of the employee generally would not be protected by discretionary immunity. No party asserts that the third scenario applies here.

The reasoning of the Court of Appeals here effectively invokes a fourth factual scenario: When an immune policy choice expresses a completed thought that fully controls how the employees should apply the policy to a particular case, and an employee correctly applies the policy to the case. The Court of Appeals assumed that that was true here. Even so, the Court of Appeals nevertheless held that the employee had made a "decision" that was not entitled to discretionary immunity.

We reject that conclusion. The Court of Appeals overly focused on the actor who rendered the policy judgment into concrete action in a particular case and not on

the immune policy choice itself. Discretionary immunity is not just concerned with protecting the persons who made the policy choice. The immunity attaches to the policy choice itself and protects a range of persons, as is demonstrated by the statutory text:

> "Every public body *and its officers, employees and agents* acting within the scope of their employment or duties \* \* \* are immune from liability for:
>
> "\* \* \* \* \*
>
> "(c)   Any claim *based upon the performance of or the failure to exercise or perform a discretionary function or duty*, whether or not the discretion is abused."

ORS 30.265(6)(c) (emphases added).

Once a discretionary choice has been made, the immunity follows the choice. It protects not only the officials who made the decision, but also the employees or agents who effectuate or implement that choice in particular cases. Only if an employee or agent makes an additional choice—one that is not subject to discretionary or other immunity—can there be liability. In that circumstance, liability attaches to the nonimmune choice and only to the nonimmune choice.

The fourth factual scenario described above is distinguishable from the three other scenarios on that basis. The first three scenarios each involve an employee action or decision that goes beyond the choices reflected in the immune discretionary policy—either because the policy itself contemplated that the employee would make additional choices or because the employee made decisions that were outside the policy (applying the policy to the wrong facts or failing to apply it to the correct facts). Under the Court of Appeals' reasoning, however, liability could be imposed on the discretionary policy decision merely because it was effectuated by the hand of someone other than the officials who had made the discretionary choice. That conclusion is inconsistent with the statutory text, which protects discretionary functions even if they are carried out by employees or agents.

The Court of Appeals' conclusion also is inconsistent with our prior case law. In *Smith*, this court observed that the purpose of discretionary immunity would be

undermined if a policy's immunity were extinguished simply because an employee implemented the policy. This court quoted with approval the following passage from a United States Supreme Court decision regarding the Federal Tort Claims Act:

> "'Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of [the discretionary immunity statute] would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.'"

*Smith*, 256 Or at 500 (quoting *Dalehite v. United States*, 346 US 15, 36, 73 S Ct 956, 97 L Ed 1427 (1953)). In a later case involving judicial immunity, this court reached the same conclusion, citing *Smith* as authority for the "general principle that employees who are following the explicit orders of their superiors who have exercised discretionary authority in making such decisions will not be answerable for performing their duty." *Praggastis v. Clackamas County*, 305 Or 419, 429, 752 P2d 302 (1988) (concluding that judicial immunity applied to the actions of a judicial employee who followed the policy decision made by the presiding judge).

In its incorrect analysis of discretionary immunity law, the Court of Appeals may have been misled by an unclear statement that this court made in *Lowrimore*. *See Westfall*, 247 Or App at 392 (quoting *Lowrimore*, 310 Or at 296).[8] We take this opportunity to clarify *Lowrimore*'s holding.

In *Lowrimore*, the plaintiff had been injured after a sheriff's deputy engaged in a high-speed chase of another vehicle. The plaintiff alleged that the county was liable because the deputy had been negligent in pursuing the other

---

[8] This court itself has had problems correctly understanding *Lowrimore*. *See Mosley v. Portland School Dist. No. 15*, 315 Or 85, 92, 843 P2d 415 (1992) (*dictum* citing *Lowrimore* for proposition that "the choice to follow or not to follow a predetermined policy in the face of a particular set of facts involving the safety of a particular individual normally is not a discretionary policy choice entitled to immunity").

vehicle. In response, the county asserted that the deputy's decision to pursue the other vehicle was entitled to discretionary immunity.

This court's analysis focused on the deputy's decision to pursue the vehicle, examining whether that choice was a policymaking decision and whether the deputy had authority to make such a policy choice. *Lowrimore*, 310 Or at 296. This court concluded that neither of those things was true: "The making of the decision to pursue does not create any departmental policy and was not made by a person with governmental discretion." *Id*. (internal quotation marks and citation omitted). That conclusion, however, was followed by this statement:

> "Although the decision to pursue *may have been made pursuant to a county departmental policy*, the decision itself is not a policy judgment."

*Id*. (emphasis added). The Court of Appeals quoted that sentence in apparent support of its analysis here. *Westfall*, 242 Or App at 392.

That sentence from *Lowrimore* contains the opinion's only reference to the county policy; *Lowrimore* provides no information about that policy. Neither does the underlying Court of Appeals opinion in that case describe the policy. *See Lowrimore v. Dimmitt*, 99 Or App 192, 781 P2d 411 (1989). Accordingly, we have consulted the briefs that the parties filed in *Lowrimore*. The appellant's brief before the Court of Appeals quoted the county policy, which clearly did not prescribe when high-speed chases were to occur. The policy instead contemplated that the deputy would make the decision whether to pursue and listed the factors for a deputy to consider in making that decision.[9]

---

[9] The county's pursuit policy at issue in *Lowrimore* stated:

"[I]t is the policy of this office that a high speed pursuit shall be attempted only when, in the deputy's judgment, the danger created by the possible escape of the fleeing violator outweighs the danger created by the high speed pursuit AND NO REASONABLE ALTERNATIVE EXISTS."

(Emphasis in original.) The policy went on to state:

"Members of this office will make a reasonable effort to pursue and stop all violators, giving consideration to:

"1. Seriousness of the crime involved;

*Lowrimore* thus falls within the first scenario that we described above, in which a governmental agency has made a policy choice that does not fully resolve how a particular case should be treated, leaving room for the employee to make additional decisions in applying the policy that (at least in *Lowrimore*) were not immune. *Lowrimore* does not stand for the proposition on which the Court of Appeals here relied: that a governmental body can be liable for its policy choices simply because they are applied in a particular case by an employee, rather than by the officials who made the policy choice.

For the foregoing reasons, then, we agree with the state. Contrary to the Court of Appeals' reasoning, a discretionary policy choice by upper-level governmental officials does not lose the protection of discretionary immunity under ORS 30.265(6)(c) whenever lower-level employees apply that policy to particular circumstances. Rather, we reaffirm the "general principle that employees who are following the explicit orders of their superiors who have exercised discretionary authority in making such decisions will not be answerable for performing their duty." *Praggastis*, 305 Or at 429.

B.  *The Department's Policy Did Not Require Employees to Make Additional, Nonimmune Decisions*

Our disagreement with the Court of Appeals' rationale, however, does not fully resolve this case. As we earlier described, plaintiff essentially argues that the decision of the Court of Appeals should be affirmed on other grounds. Specifically, he maintains that the department's policy contemplated that the department's employees would choose whether to make the sentence in a particular case consecutive *either* to sentences imposed the same day or to sentences imposed previously. That particular choice, plaintiff urges, was not entitled to the protection of discretionary immunity.

"2.  Possibility of identifying the suspect at a later time;

"3.  Speed of fleeing vehicle;

"4.  Weather, traffic and road conditions;

"5.  Hazard to the safety of citizens and to the pursuing deputy; and

"6.  Provisions of O.R.S. 820.300, 320."

The state disputes that contention, maintaining that the department's policy did not give its employees any choices:

> "Contrary to plaintiff's belief, [the department's] policy *does not* give prison term analysts any discretion for how to construe the phrase 'consecutive to previously imposed sentences.' Rather, the policy instructs the analysts about how they *must* construe that phrase. And because the record clearly shows that the prison term analyst in plaintiff's case correctly applied that policy in computing his sentence, any claim that the analyst was negligent in performing his or her duties necessarily fails."

(Emphases in original.) Instead, the state asserts, the policy required its employees to run the consecutive sentence from the expiration of the longest outstanding sentence to which it was consecutive, even if that sentence had been imposed the same day.

Plaintiff's alternative argument focuses on whether the policy left it to the department's employees to choose how to structure the consecutive sentence for Count 49. If the policy did so, we must then consider whether that decision by the department's employees constituted the sort of policy choice otherwise subject to discretionary immunity. As we will explain, however, we conclude that the policy did not leave subordinates with the choice that plaintiff perceives.

We begin with the department's policy. In interpreting the policy, however, we are not merely determining the objective meaning of the written document. Because the department has offered its interpretation of its own policy, we will defer to that interpretation as long as that interpretation is plausible and not inconsistent with the policy in its context or with any other source of law. *See Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 430 n 14, 212 P3d 1243 (2009); *Friends of Columbia Gorge v. Columbia River (S055822)*, 346 Or 366, 410, 213 P3d 1164 (2009); *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (all addressing an agency's interpretation of its own rules).

As noted, the department interprets its policy to require its employees to run the consecutive sentence from

the longest of the remaining sentences to which the sentence is consecutive. If that interpretation is a plausible reading of the policy and consistent with it, then we will respect it unless it is inconsistent with some other law.

We begin with the text of the policy. In its relevant part, the policy specifies how to calculate consecutive sentences, depending on the particular text contained in the judgment of conviction. For context, we quote again the three provisions relating to consecutive sentences:

"1.   <u>'Consecutive to Sentences Previously Imposed'</u>

"A consecutive sentence begins on the date of completion of the preceding sentence in the sequence of sentences. If the court orders that a sentence be served 'consecutive to sentences previously imposed,' the sentence will be set up as consecutive to any other sentences imposed the same date or on an earlier date. (Sentences imposed the same date **will be** considered as 'previously imposed.') * * *

"2.   <u>'Consecutive to Sentences Simultaneously Imposed'</u>

"If the court orders that a sentence be served 'consecutive to sentences simultaneously imposed,' the sentence will be set up as consecutive to any other sentences imposed the same date. (Sentences imposed on an earlier date **will not** be considered 'simultaneously imposed.')

"3.   <u>'Consecutive to Sentences Currently Being Served'</u>

"If the court orders that a sentence be served 'consecutive to sentences currently being served,' the sentence will be set up as consecutive to any other sentences imposed the same date or on an earlier date. (Sentences imposed the same date **will be** considered as [']currently serving.')"

(Emphases in original.)

In this case, the Josephine County judgment of conviction provided that the sentence on Count 49 would be "consecutive to all previously imposed sentences." Accordingly, the judgment of conviction here fell within option 1, "'Consecutive to Sentences Previously Imposed.'" Plaintiff emphasizes the "or" in the second sentence: "[T]he sentence will be set up as consecutive to any other sentences imposed the same date *or* on an earlier date." Plaintiff

asserts that that "or" requires the department's employees to decide whether to have a consecutive sentence run consecutive either to a sentence imposed the same date or to a sentence imposed on an earlier date.

Under plaintiff's interpretation, then, the department's policy did not require its employees to make the sentence in Count 49 consecutive to the same-day sentences in Counts 10 and 46. Instead, the policy directed the employees to make a choice: Either run the sentence consecutive to the same-day sentences in Counts 10 and 46, or run that sentence consecutive to a previously imposed sentence. Plaintiff goes on to argue that that choice by the employee was not a discretionary choice among policy alternatives, but was instead the sort of routine, day-to-day decision that is not protected by discretionary immunity.

We are not persuaded by plaintiff's reading of the policy. The department's interpretation of its policy, by contrast, is not only plausible, but also appears to us to accurately reflect the written text. As we will explain, the text of the policy, in context, directs the department's employees how to interpret a judgment of conviction that imposes a consecutive sentence. The policy determines the bundle of sentences (if there are more than one) to which a consecutive sentence will be consecutive. If the sentence is consecutive to more than one sentence, the employee does not choose which sentence triggers the consecutive sentence; the consecutive sentence is triggered when the last sentence in the bundle has been served.

Beginning with the text, the policy describes three policy options. All three address how the department's employees should interpret the text of differing judgments of conviction. Each option uses the mandatory directive "will": "[T]he sentence *will* be set up" in a particular fashion. That text thus suggests that the department understood the policy to provide controlling directions to its employees. All three of the options also indicate that the consecutive sentence will be consecutive "to *any* other sentences" that meet the relevant conditions. Thus, the policy requires an employee to treat any sentence that meets the appropriate factual criteria in the fashion that the policy directs.

Plaintiff's focus on the "or" in the phrase "any other sentences imposed the same date or on an earlier date" might carry some weight in a different context. Here, however, that argument fails to recognize that a sentence may be consecutive to more than one sentence. When a court makes a sentence consecutive to more than one sentence, the consecutive sentence will begin to run only when the last of those other sentences is completed.

Consider an example. A criminal defendant receives three concurrent sentences in one criminal case: sentence A for 12 months, sentence B for 18 months, and sentence C for 24 months. On a later date, the defendant receives sentence X, a 12 month sentence imposed "consecutive to all previous sentences." Because sentence X is consecutive to all three of the other sentences—A, B, and C—sentence X will begin when the last of those sentences expires. In this hypothetical, sentence X will run consecutive to sentence C because sentence C will be the last of those three sentences to expire.

That analysis, we believe, is implicit in the concept of a sentence that is consecutive to more than one other sentence: The sentence is consecutive to all of them, so it necessarily will begin only once the last of the other sentences ends. If there were any doubt, however, the department has expressly stated as much in its policy. Again, the policy states:

"If a sentence is consecutive to more than one other sentence, the PTA will determine which of the other sentences will be completed last and enter the consecutive sentence[] as CS [consecutive] to that sentence."

The department's interpretation of its policy merely extends that principle to same-day sentences. When considered in context, that interpretation is both plausible and consistent with its written policy. The policy identifies three ways in which a trial court might describe a consecutive sentence: Consecutive to sentences previously imposed, consecutive to sentences simultaneously imposed, and consecutive to sentences currently being served. The policy directs employees dealing with a sentence that is "consecutive to sentences previously imposed" to treat that sentence as being consecutive to any sentence that was either previously

imposed or imposed the same day. The function of the "or" in the policy is not to signal a choice for employees, but rather to identify that the sentence will be consecutive to any sentence that meets either of the factual criteria: either imposed the same date or imposed previously. The policy identifies for the employee the bundle of sentences to which the consecutive sentence is consecutive. Whichever of those sentences in the bundle expires last will be the sentence that triggers the beginning of the consecutive sentence.

A modified version of the prior hypothetical will illustrate the point. As before, a criminal defendant has received three concurrent sentences in one criminal case: sentence A for 12 months, sentence B for 18 months, and sentence C for 24 months. On a later date, the defendant receives sentence D, a 12-month sentence, and then sentence X, which is for 12 months "consecutive to all previous sentences." Because the policy directs the department to treat sentence X as consecutive to all four of the other sentences—A, B, C, and D—sentence X will begin when the last of those sentences expires, whichever that might be. Thus, sentence X will run consecutive to sentence C if more than 12 months of sentence C remain to be served, because then sentence C would be the last of the previously imposed sentences to be completed (sentence D, which is running concurrently with sentence C, would expire first). But if fewer than 12 months of sentence C remain to be served, then sentence X will run consecutive to sentence D, because sentence D will be the last sentence of the previously imposed sentences to expire. In neither event will a department employee choose between sentence C or sentence D.

Therefore, a departmental employee who is correctly applying the policy has no choice to make in calculating a sentence like plaintiff's. Depending on the text used in the judgment of conviction that imposed the consecutive sentence, the policy specifies the sentences to which the consecutive sentence will be considered consecutive. The employee determines which sentence in that bundle ends last, and the consecutive sentence will run from that date. As long as the employee properly applies the policy to the facts, the employee has no choices to make.

Because the department's interpretation of its policy accords with our own reading of the policy, the interpretation is both plausible and consistent with the policy's text in context. Plaintiff has not argued before this court that the department's interpretation is inconsistent with any other law. Consequently, we defer to the department's understanding of its own policy.

We therefore reject plaintiff's assertion that the policy required the department's employees to make choices about how to structure his sentence. Because plaintiff's judgment of conviction in Josephine County stated that Count 49 would be "consecutive to all previously imposed sentences," the policy directed the department's employees to consider that sentence as consecutive to all sentences imposed the same day, as well as all sentences imposed previously. Of that bundle, two sentences qualified as ending last because they both ended on the same date: the 13-month sentences on Counts 10 and 46. The policy thus required the department's employees to have the consecutive sentence in Count 49 run consecutively to Counts 10 and 46. The department's employees did not have any authority under the policy to have Count 49 run consecutively to any other sentence.

On the issues presented to this court, then, we conclude that the trial court correctly granted summary judgment on discretionary immunity as to the negligence claim.

C. *Remand for Court of Appeals to Consider Additional Issues*

That does not mean that the judgment of the trial court must be affirmed. In the Court of Appeals, plaintiff maintained that discretionary immunity does not apply to intentional torts such as plaintiff's false imprisonment claim. Plaintiff also argued that the department's policy required the department's employees at least to bring the questions regarding the meaning of the Josephine County Circuit Court judgment to the attention of a supervisor, if not to actually contact the circuit court themselves. The Court of Appeals did not need to reach either question, given its holding, and the parties did not brief those issues to this court. Accordingly, we remand to the Court of Appeals so that it may consider those arguments in the first instance.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.