Submitted on remand May 27, affirmed October 8, 2014

CHESTER C. WESTFALL,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
by and through the actions of its agency the
Oregon Department of Corrections,
*Defendant-Respondent.*

Marion County Circuit Court
07C23164; A140772

337 P3d 853

Bradley J. Volk, Richard L. Cowan, and Rockwell & Cowan filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

This case is before us on remand after the Oregon Supreme Court reversed our decision in *Westfall v. Dept. of Corrections*, 247 Or App 384, 271 P3d 116 (2011), *rev'd and rem'd*, 355 Or 144, 324 P3d 440 (2014). In our original opinion, we concluded that the trial court had erred in granting summary judgment to the Department of Corrections on the basis of discretionary immunity, which obviated the need for us to address plaintiff's remaining arguments on appeal. On review, the Supreme Court reversed our discretionary-immunity decision and remanded the case to us, explaining:

> "That does not mean that the judgment of the trial court must be affirmed. In the Court of Appeals, plaintiff maintained that discretionary immunity does not apply to intentional torts such as plaintiff's false imprisonment claim. Plaintiff also argued that the department's policy required the department's employees at least to bring the questions regarding the meaning of the Josephine County Circuit Court judgment to the attention of a supervisor, if not to actually contact the circuit court themselves. The Court of Appeals did not need to reach either question, given its holding, and the parties did not brief those issues to this court. Accordingly, we remand to the Court of Appeals so that it may consider those arguments in the first instance."

*Westfall*, 355 Or at 170. We now consider each of plaintiff's remaining arguments and, for the reasons set out below, affirm.

We take the facts, to the extent that they bear on plaintiff's arguments on remand, from the Supreme Court's opinion on review:

> "Plaintiff was serving a prison sentence when he escaped from custody. In July 2001, after he was recaptured, the Marion County Circuit Court sentenced plaintiff to a 20-month consecutive sentence for second-degree escape II. Because the sentence was 'consecutive to any sentence previously imposed,' plaintiff's prison term would end when that 20-month sentence was served.

> "In September 2002, plaintiff received six prison sentences in a Josephine County Circuit Court case. Those sentences are the essential source of plaintiff's complaint

here. Four of the sentences were concurrent, and two were consecutive. Plaintiff received 12-month concurrent sentences on Counts 14 and 22, and 13-month concurrent sentences on Counts 10 and 46. On Count 49, however, the judgment provided that the trial court sentenced plaintiff to 26 months 'consecutive to all previously imposed sentences.' Finally, on Count 5 the trial court sentenced plaintiff to 10 months consecutive to the sentence imposed in Count 49.

"At that time, then, plaintiff's term of imprisonment would have ended when he completed three consecutive sentences sequentially: The 20-month Marion County sentence, the 26-month sentence for Josephine County Count 49, and the 10-month sentence for Josephine County Count 5. All plaintiff's other outstanding concurrent sentences—including the four concurrent sentences in Josephine County—had no effect on the term of imprisonment, at least at that time. They were running concurrently with the 20-month Marion County sentence and would have expired before the Marion County sentence was completed.

"In 2005, however, the 20-month Marion County escape sentence was vacated and remanded. On resentencing, the new sentence in that case was so reduced that plaintiff had already completed that sentence.

"The department thus had to recalculate plaintiff's remaining term of imprisonment. In particular, the department needed to determine which sentence would, when it expired, trigger the beginning of plaintiff's 26-month consecutive sentence for Josephine County Count 49. The department's employees interpreted the department's written policy to dictate that the words 'consecutive to all previously imposed sentences' in the Josephine County judgment for Count 49 meant consecutive not only to sentences imposed previously, but also consecutive to sentences imposed the same day. Because the longest outstanding remaining sentences that met those criteria were the two 13-month sentences on Counts 10 and 46 imposed by the Josephine County Circuit Court on the same day, the department recalculated plaintiff's term of imprisonment so that the 26-month sentence on Count 49 would start when the 13-month sentences on Counts 10 and 46 expired. Thus, plaintiff would serve a total of 49 months on his Josephine County sentences: 13 months on Counts 10 and 46, followed by 26 months on Count 49, followed by

10 months on Count 5 (with the two 12-month sentences in Counts 14 and 22 running concurrently).

"When plaintiff learned of the department's recalculation, he objected. He asserted that the Josephine County Circuit Court had not intended the 26-month sentence in Count 49 to run consecutively to any sentence entered that same day. The court, he maintained, had intended the sentence to be consecutive to only the sentences imposed in earlier cases. Plaintiff noted that his plea agreement in the Josephine County case specifically stated that he would only serve a total of 36 months for the sentences imposed on that case. Plaintiff thus contended that the Josephine County Circuit Court had intended the total time served in that case to be the 26-month consecutive sentence on Count 49 plus the 10-month consecutive sentence in Count 5, with all the other sentences being concurrent.

"The department refused to change its calculations. By a written memo, a [prison-term analyst (PTA)] informed plaintiff that the department was bound by the written text of the Josephine County judgment and that plaintiff would need to seek an amended judgment before the department could take action:

"'Unfortunately I cannot structure your sentences based on the plea agreement. The wording in the plea agreement [for Count 49] states the sentence would be "consecutive to any other sentence." This is the same as the wording in the judgment. I see the intent of the court was to make your sentence a total of 36 months. If you will note in the line [of the plea agreement] above *** it states that the court is not required to accept or comply with any agreement between [plaintiff] and the District Attorney.'

"'I must abide by the wording in the judgment. Until an amended judgment is received from the court your sentences will remain as they are[.]'

"Before receiving that memo, however, plaintiff had already filed a formal motion with the Josephine County Circuit Court asking it to amend its judgment to indicate that the 26-month sentence for Count 49 would not be consecutive to the other sentences imposed in that case on the same day. That motion was still pending when the department advised plaintiff to seek an amended judgment from the circuit court. Plaintiff sent a copy of the department's

memo to the circuit court. Some time later, the court denied the motion to amend the judgment without explanation. The department released plaintiff in December 2005, at which point plaintiff had served his prison term as calculated by the department.

"* * * * *

"In December 2007, plaintiff filed a complaint against the state. In it, he alleged two causes of action: negligence (in the calculation of his sentence) and false imprisonment. He maintained that the state, by interpreting his Josephine County sentences to require him to serve 49 rather than 36 months, had unlawfully imprisoned him for an extra 13 months.

"After answering the complaint, the state moved for summary judgment. It asserted that the department's employees who computed plaintiff's total sentence had correctly applied the department's written policy and the choices reflected in the written policy were entitled to discretionary immunity under ORS 30.265(6)(c).

"Plaintiff opposed the motion. He argued, among other points, that the PTA's decision about how to calculate the sentence was a ministerial one, not the sort of exercise of discretion entitled to immunity. Plaintiff also asserted that the department's policy could not override the Josephine County Circuit Court's intent to limit the Josephine County sentences to a total of 36 months.

"The trial court agreed with the state that discretionary immunity applied to plaintiff's negligence claim, but it asked for additional briefing as to whether discretionary immunity might also apply to plaintiff's claim in intentional tort for false imprisonment. After receiving that additional briefing, the trial court concluded that discretionary immunity also applied to intentional torts, and the court granted summary judgment for the state."

*Id.* at 150-54 (footnotes omitted; brackets in original).

We turn first to plaintiff's argument that the Department of Correction's policy on the calculation of prison terms required the department's employees to bring questions about the meaning of a judgment to the attention of a supervisor, if not to contact the circuit court themselves. The genesis of that argument lies in the department's extensive

written policy on the manner in which a prison-term analyst (PTA) should calculate a prisoner's term of incarceration. As relevant, that policy provides:

> "Occasionally, courts issue judgments that do not comply with statutory requirements. If a PTA becomes aware of a problem with a judgment, particularly a problem that might result in a violation of the inmate's rights or a deprivation of a liberty interest of the inmate, the PTA must immediately bring the problem to the attention of a leadworker or technician.
>
> "Such problems include clerical mistakes or oversights (including typographical errors) as well as substantive errors in the application of sentencing laws. Where an error in a judgment appears to be a clerical error, the PTA will contact the court for clarification and to allow the court the opportunity to correct the error. * * *
>
> "The PTA must also request that the court send an amended judgment. The PTA must not rely solely on verbal instructions regarding changes to a written judgment.
>
> "**Note:** * * * DOC **may not** accept letters or verbal instructions from the court, District Attorney, or other sources for use in sentence calculation. DOC is bound by the judgment and must receive amended judgments before any changes can occur."

(Boldface and underscoring in original.)

In light of that written policy, plaintiff argues on appeal that the department's PTA had a duty to contact either a supervisor or the sentencing court once the PTA was alerted to a problem with the sentencing judgment; that, because plaintiff's plea petition included a statement limiting the contemplated term of incarceration to 36 months, the PTA "should have concluded that there was a problem in the way [the PTA was] interpreting Plaintiff's release date"; and that a disputed issue of material fact remains as to whether the PTA informed a supervisor or the sentencing court of that problem.

In response, the department argues that its policies do not allow a PTA to identify a sentencing mistake by looking at documents other than a judgment or to consider anything other than the judgment when calculating

an inmate's incarceration term. In any event, the department contends that plaintiff failed to preserve that argument and, therefore, that we cannot consider it on appeal. *See State v. Amaya,* 336 Or 616, 629, 89 P3d 1163 (2004) (party must present specific legal theory to trial court in the first instance).

We agree with the department that plaintiff failed to preserve that argument. In his complaint, plaintiff alleged as the basis for his negligence claim that the department "incorrectly interpreted" his judgment and, in doing so, "disregarded or failed to review Plaintiff's plea petition." In its motion for summary judgment, the department contended that the PTA had properly interpreted the judgment, in accordance with department policy. Addressing plaintiff's second contention, the department noted that, "[r]egardless of what is contained in a plea negotiation between the parties, or what is stated in open court, [the department] has a duty and authority to only execute the express wording of a written criminal judgment."

In response, plaintiff first distinguished cases on which the department had relied. He then continued:

"If, in fact, the Plea Petition and Order * * * could not be considered by ODOC when interpreting and determining Plaintiff's proper release date, Plaintiff contends that the 'Judgment' alone could not possibly leave any room for interpretation by ODOC that the sentences on Count 49 * * * and Count 5 * * * of the Josephine County case would run consecutive to Count 46 * * * of the same Josephine County case * * *. The sentences were a package deal which were supposed to total 36 months."

Thus, in both his complaint and briefing at summary judgment, plaintiff argued that the judgment, viewed either in tandem with his plea petition or alone, could be interpreted to allow for a total sentence of only 36 months and that the department negligently and incorrectly concluded otherwise. He did not argue, as he does on appeal, that a PTA negligently failed to contact a supervisor or the sentencing court in the face of an apparent "problem in the way [the PTA was] interpreting" the release date in the judgment. Accordingly, because he did not present it to the trial court in the first instance, he cannot now raise that

argument on appeal. *See Blankenship v. Smalley*, 262 Or App 240, 250-51, 324 P3d 573 (2014) (defendant failed to preserve issue that, although pleaded, was not raised before the trial court during summary judgment proceedings).

We turn to plaintiff's argument that discretionary immunity does not apply to intentional torts and, consequently, that the trial court erred when it granted summary judgment in favor of the department on plaintiff's claim for false imprisonment. As noted, at the hearing on the department's summary judgment motion, the trial court granted summary judgment as to plaintiff's negligence claim but reserved ruling on plaintiff's false-imprisonment claim and offered the parties an opportunity to provide additional briefing on whether discretionary immunity applies to intentional torts. Thereafter, the department submitted a brief, arguing that, under the Oregon Tort Claims Act, discretionary immunity applies to "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." ORS 30.265(6)(c).[1] The department contended that that provision or verbage does not support a distinction between claims based on negligence and claims based on intentional torts, and it cited to a number of cases in which discretionary immunity had been applied to intentional torts. *See Disney-Marine Co., Inc. v. Webb*, 47 Or App 985, 615 P2d 1125 (1980) (applying discretionary immunity to an action for trespass); *Donahue v. Bowers/Steward*, 19 Or App 50, 52, 526 P2d 616 (1974) (rejecting argument that discretionary immunity serves only "to protect officials from negligence claims, not claims for intentional tort"); *Sullivan v. State*, 15 Or App 149, 515 P2d 193 (1973) (affirming a directed verdict in favor of the state on the ground that the state was entitled to discretionary immunity on the plaintiff's claim for false imprisonment). The trial court agreed with the department and granted summary judgment in its favor on plaintiff's false imprisonment claim.

---

[1] At the time of the summary judgment proceedings in 2008, the operative portion of the statute was ORS 30.265(3)(c). In 2011, the legislature amended ORS 30.265 to add three new subsections, moving the operative portion of the statute to ORS 30.265(6)(c). Aside from the internal renumbering, the 2011 amendments did not alter the statutory text on discretionary immunity.

On appeal, plaintiff challenges that ruling. He contends that Oregon courts have not "clearly decided" whether discretionary immunity should apply to intentional torts and, distinguishing the cases on which the department relied, contends that "[a]t best * * * discretionary immunity might apply to a plaintiff's claim of the intentional tort of false imprisonment on a case-by-case basis." In turn, the department reprises its argument that, by its terms, ORS 30.265(6)(c) makes discretionary immunity available for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty."

As an initial matter, we agree with the department that ORS 30.265(6)(c) does not distinguish between claims for negligence and claims for intentional torts. The statute provides:

> "(6)   Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:
>
> "* * * * *
>
> "(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

(Emphasis added.) Plaintiff does not explain, and nor can we, how that language supports the distinction that he seeks. Accordingly, we reaffirm what we have held in the past: Discretionary immunity can apply to claims for intentional torts. *E.g.*, *Disney-Marine Co., Inc.*, 47 Or App at 985; *Donahue*, 19 Or App at 50; *Sullivan*, 15 Or App at 149.

However, plaintiff is correct that whether discretionary immunity applies to a *particular* claim based on false imprisonment is determined on a case-by-case basis; that proposition is not remarkable. Whether discretionary immunity applies to a particular claim *based on negligence* also is determined on a case-by-case basis: In both instances, the dispositive inquiry is whether the governmental actor made a protected, discretionary policy decision to which discretionary immunity applies. As the Supreme Court explained in the course of remanding this case to us, "[o]nce a discretionary choice has been made, the immunity

follows the choice." 355 Or at 161. Hence, when a plaintiff is challenging the actions of an employee who is *required* to apply an otherwise protected policy choice, discretionary immunity applies unless "an employee or agent makes an additional choice—one that is not subject to discretionary or other immunity." *Id.*

Here, the Supreme Court has decided that issue for us. The conduct at the heart of plaintiff's false imprisonment claim is the same conduct that underlies his negligence claim: the PTA's calculation of plaintiff's incarceration term. On review, the court concluded that that conduct was protected by discretionary immunity because it reflected the PTA's obligation to apply a protected policy choice. *Id.* at 164, 170. Thus, because plaintiff cannot challenge the propriety of the PTA's calculation of his release date, he cannot establish, as he must to prevail on his false-imprisonment claim, that the department "intentionally kept [him] in prison for approximately 13 months *** beyond the proper release date." It follows that the trial court did not err in granting summary judgment in the department's favor on that claim.

In sum, plaintiff failed to preserve his argument that the PTA was negligent for failing to report to a supervisor a potential disparity between plaintiff's plea petition and his judgment of conviction. And the trial court did not err in granting summary judgment on plaintiff's false-imprisonment claim.

Affirmed.