Argued and submitted January 31, 2013, affirmed April 16, 2014

Dianna BLANKENSHIP,
*Plaintiff-Respondent,*

*v.*

Robert SMALLEY,
*Defendant,*
*and*

Carol SMALLEY,
*Defendant-Appellant.*

Clatsop County Circuit Court
102175; A149918

324 P3d 573

Lisa T. Hunt argued the cause for appellant. With her on the briefs was Law Office of Lisa T. Hunt, LLC.

Thomas Raymond Rask, III, argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

In this contract dispute, defendant appeals a limited judgment, contending that the trial court erroneously granted summary judgment to plaintiff. Plaintiff initiated an action against defendant Carol Smalley and Carol's ex-husband, Robert Smalley,[1] for, among other things, breach of contract. The dispute centered on the Smalleys' purchase of plaintiff's shoe business, and related specifically to a June 2009 contract executed by plaintiff and Robert that set forth the purchase terms. Plaintiff alleged that she had orally agreed to sell the business to the Smalleys in February 2009,[2] and that the written contract that plaintiff and Robert entered into in June 2009 served to memorialize that February 2009 agreement. Plaintiff further alleged that defendant had breached that contract by not making the required payments. Defendant responded that the oral agreement that she reached with plaintiff in February 2009 differed from the terms of the June 2009 contract, that she was not bound by the latter contract, and that she had satisfied the terms of the February 2009 agreement.

Plaintiff moved for summary judgment on a partnership and agency theory, contending that there was no genuine issue of material fact that defendant, as Robert's business partner, was bound by the terms of the June 2009 contract executed by Robert, and that defendant had breached that contract. The trial court agreed and granted summary judgment.

On appeal, defendant raises three assignments of error. First, she asserts that the court improperly concluded that the June 2009 contract bound "a purported 'partnership' arising from [defendant's] solely-owned LLC." Second, she contends that genuine issues of material fact existed as to whether plaintiff had "legally sufficient notice" that Robert

---

[1] Plaintiff named Robert as a defendant in the action and the limited judgment was entered against Robert and Carol, with joint and several liability. Robert did not appeal the judgment and is not a party to this appeal. Accordingly, throughout this opinion, we refer to Carol as defendant and Robert and Carol, collectively, as "the Smalleys."

[2] There is some dispute about whether the parties reached agreement in late February 2009, or March 1, 2009. That dispute does not affect our analysis, and for ease of reference we refer to the agreement as the February 2009 agreement.

lacked authority to enter into a contract binding defendant. Third, she maintains that the court could not determine the amount of damages "on this record as a matter of law." As explained below, we conclude that defendant failed to preserve her first and third assignments of error. Accordingly, we only address the merits of her second assignment and, on that assignment, we conclude that the court properly determined that no genuine issues of material fact existed as to whether plaintiff knew or had received a notification that Robert lacked authority to bind the partnership in June 2009. Therefore, we affirm.

Summary judgment is appropriate if there is no genuine issue of material fact for trial and the moving party is entitled to prevail as a matter of law. ORCP 47 C. There is no issue of material fact if, based on the record, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* To determine whether a genuine issue of material fact exists, we review the summary judgment record in the light most favorable to the nonmoving party— in this case, defendant—and draw all reasonable inferences in her favor. *Jones v. General Motors Corp.*, 325 Or 404, 413, 939 P2d 608 (1997). We state the facts consistently with that standard.

The Smalleys are former spouses. Robert resides in Seaside, Oregon, and defendant resides in Scottsdale, Arizona. Plaintiff operated a shoe and clothing store in Seaside called Place 2, along with a similar store in Gearhart. The Smalleys operated a shoe and clothing store in Tillamook. Defendant generally handled the financial aspects of that business and Robert handled the day-to-day operations.

During a telephone conversation in the fall of 2008, defendant asked plaintiff if she was interested in selling Place 2 or having the Smalleys take over the business. In that conversation, defendant told plaintiff, "If anything comes to fruition, I will be your contact." Subsequently, Robert and plaintiff discussed the terms of a possible sale or takeover of Place 2, and Robert relayed the details of those discussions to defendant. In late February 2009, defendant called plaintiff to confirm the terms of a purchase agreement, to get

additional information, and to confirm that she and Robert were going to take over the store on March 1. During that conversation, defendant confirmed her understanding of the agreement with plaintiff. She explained to plaintiff that she understood that plaintiff wanted her to take over Place 2 by purchasing the existing inventory at the manufacturer's cost, which was estimated to be $34,200.[3] Defendant informed plaintiff that she was prepared to pay "$5,000 down" and $2,000 per month "until it is satisfied." Defendant expected to pay off the inventory cost by the fall, and defendant informed plaintiff that, by purchasing the inventory, she was also purchasing the business. The parties did not reduce that agreement to writing. Defendant did not speak to plaintiff again until August 2009.

The Smalleys took possession of Place 2 on March 1, 2009, changed the name of the store to Seaside Shoes, and registered the business with the Secretary of State. Defendant's business registration listed her and Robert as co-owners of the store. Over the next few months, defendant sent payments to plaintiff in various amounts. Robert also sporadically paid plaintiff with cash out of the store's cash register. In total, plaintiff was paid between $17,000 and $18,000. In addition, the Smalleys provided some inventory to plaintiff for her to sell at her Gearhart store. Defendant alleged that the value of that inventory was between $30,000 and $40,000.

In the months that followed the February 2009 agreement, Robert and plaintiff discussed reducing that agreement to writing. Robert represented to plaintiff that he and defendant were partners and that he had full authority to execute an agreement on behalf of the partnership. In June 2009, Robert and plaintiff executed a written contract for the purchase of plaintiff's business that varied from the terms that defendant and plaintiff had agreed to during their February 2009 telephone conversation.[4] Under the June 2009 contract, the purchasers of Place 2 were to

---

[3] The parties dispute whether a $5,000 credit from a shoe manufacturer was also part of the agreed upon cost of inventory. Given our disposition, that dispute is immaterial to our discussion.

[4] Plaintiff asserts that the terms of the June 2009 contract were essentially the same as the terms agreed to orally in February 2009. Nevertheless, in light of

pay $39,000 for the inventory and an additional sum that was equal to the average yearly sales for 2009 and 2010. In addition, 10 percent of the monthly sales of Place 2 were to be paid to plaintiff, and those amounts were to be credited against the ultimate purchase price of the business. The parties agree that the average yearly sales for 2009 and 2010 equaled $156,500. The June 2009 contract did not list the name of any corporate entity and was executed solely by Robert and plaintiff.

Defendant had no knowledge of the contract executed by Robert and plaintiff. She first became aware of it in the fall of 2009 when plaintiff's lawyer contacted defendant requesting additional payments. Defendant was "furious" with Robert and did not believe that he was authorized to enter into any agreement with plaintiff as to the purchase of Place 2. In January 2010, defendant brought an action against Robert, seeking damages for the conversion of Seaside Shoes. According to defendant's allegations in that action, Robert had taken over the business and excluded her from it without her consent or approval.

In March 2010, plaintiff filed a claim against the Smalleys for, among other things, breach of contract, alleging that they had breached the June 2009 contract by not paying the purchase price agreed upon.[5] Plaintiff alleged that the Smalleys were business partners, that the parties had agreed to the purchase terms of Place 2 around March 1, 2009, that the written contract of June 2009 memorialized the terms of that agreement, that the Smalleys had paid a little over $17,000 towards the purchase price and inventory, and that the Smalleys were entitled to $21,700 in credit for inventory that they had provided to plaintiff's Gearhart store. Accordingly, plaintiff sought damages of $156,806.55—the remainder of the amount allegedly owing under the contract. In her answer, defendant raised an affirmative defense that the parties had entered into an oral

---

our standard of review, we accept defendant's version of the terms of the February 2009 agreement.

[5] Plaintiff's initial complaint named only Robert as the defendant. Plaintiff later moved to join Carol as a defendant. After the court granted that motion, plaintiff amended her complaint twice. In describing plaintiff's action, we describe only the allegations in the operative complaint, *i.e.*, the second amended complaint.

contract in late February 2009 to purchase the business for the cost of the inventory; she further asserted that the terms of that agreement had been satisfied. Defendant also brought a counterclaim, alleging that plaintiff had wrongfully retained between $30,000 and $40,000 in inventory for her Gearhart store that rightfully belonged to defendant.

Plaintiff moved for summary judgment on a partnership and agency theory. First, plaintiff contended that defendant and Robert had established a partnership under ORS 67.055(1).[6] In support of that proposition, plaintiff submitted some of the Smalleys' business records related to Seaside Shoes, an affidavit from Robert attesting that the Smalleys were partners and that he had executed the June 2009 contract on behalf of their partnership, and testimony from defendant's conversion action in which she indicated that the Smalleys were business partners in Seaside Shoes. According to plaintiff, because there was no genuine issue of material fact that the Smalleys were partners, Robert was an agent of the partnership when he executed the June 2009 contract and, under ORS 67.090(1),[7] the partnership was bound by that act unless plaintiff "knew or had received a notification that [Robert] lacked authority." Plaintiff further maintained that she did not know and had not received a notification that Robert lacked authority to enter into the June 2009 contract. The trial court granted summary judgment to plaintiff, concluding that there was no genuine issue of material fact that the Smalleys had formed a partnership, that they had the ability to bind each other, and that plaintiff reasonably relied on Robert's representations that he was authorized to produce a written agreement to purchase plaintiff's business, which led to the June 2009 contract that defendant breached.

---

[6] ORS 67.055(1) provides, in relevant part, "the association of two or more persons to carry on as co-owners a business for profit creates a partnership, whether or not the persons intend to create a partnership."

[7] ORS 67.090(1) provides:

"Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the name of the partnership, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."

On appeal, in three assignments of error, defendant contends that summary judgment was improper because genuine issues of material fact remained as to (1) the existence of a partnership, (2) whether the June 2009 contract was binding on defendant, and (3) the amount of damages due under the contract.

We begin with preservation. Plaintiff asserts that defendant failed to preserve her first and third assignments of error, and we agree. A party claiming error must present a claim of error to the trial court before we will consider it on appeal. ORAP 5.45(4). The rule of preservation has both prudential and pragmatic purposes. *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). As a prudential matter, one purpose of the preservation rule is to allow the adversary to present its position and to permit the court to understand and avoid or correct the error. *Peiffer v. Hoyt*, 339 Or 649, 655-57, 125 P3d 734 (2005). In addition, preservation "ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise." *Peeples*, 345 Or at 219. It also "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Id.* at 219-20.

In her first assignment of error, defendant maintains that the court erred when it decided on summary judgment that the June 2009 contract bound the Smalleys' "purported partnership." She asserts several contentions in support of that assignment, all of which appear to hinge on the existence of an issue of fact as to whether a partnership existed. First, she maintains that there were disputed facts about whether Robert and defendant held themselves out as business partners to plaintiff. Specifically, she argues that she submitted evidence that Robert's authority was limited and that plaintiff was aware of that limitation. She also claims that, in order to bind the partnership, the contract had to be executed in "the name of the partnership" under ORS 67.090(1), and that there were additional factual issues that needed to be resolved under ORS 67.115, the statute addressing the liability of a "purported partner." Second, she contends that the record contained conflicting

evidence as to what Robert represented to plaintiff at the time he executed the June 2009 contract that created a factual dispute as to whether plaintiff understood that a partnership existed in June 2009. Third, defendant asserts that the record contained evidence that Robert acted alone and did not transact with plaintiff on behalf of any partnership. Fourth, she claims that, because the allegations in plaintiff's "prior pleadings" conflicted with the allegations in her second amended complaint, that inconsistency created an issue of fact as to whether plaintiff intended to sell the business "solely" to Robert. Finally, defendant maintains that the court may have inappropriately considered evidence from her conversion action against Robert when granting summary judgment to plaintiff because the same judge presided over both cases.

Defendant failed to preserve her first assignment of error.[8] The gist of that assignment is a challenge to the court's determination that the Smalleys were in a partnership and, as we explain below, the existence of a partnership was explicitly acknowledged by defendant in the summary judgment proceedings. As for defendant's additional contentions relating to ORS 67.090(1) and ORS 67.115 and the conflict in plaintiff's pleadings, those positions were not presented to the trial court.[9]

As noted, plaintiff moved for summary judgment on a straightforward partnership and agency theory. She argued that there was no issue of fact that defendant and Robert were business partners and that, under ORS 67.090(1), a partner is an agent of the partnership. Moreover, plaintiff asserted that under ORS 67.090(1), a partnership is bound by an act of any partner "apparently carrying on in the ordinary course of the partnership business" unless the third party with whom the partner was dealing "knew or

___

[8] To the extent that defendant contends in her first assignment of error that the trial court incorrectly concluded that there was no genuine issue of material fact as to whether plaintiff knew or had received a notification that Robert lacked authority to execute the June 2009 contract on defendant's behalf, that argument overlaps with defendant's second assignment of error, which we address later in this opinion.

[9] We reject without further discussion defendant's contention that the trial court improperly considered evidence from defendant's conversion action against Robert when deciding summary judgment in this case.

had received a notification that the partner lacked author-ity" to take action on behalf of the partnership.

In her summary judgment response, defendant con-ceded that she and Robert had "some sort of business rela-tionship" but denied that the relationship "constitute[d] a general partnership, or that the respective interests of the parties thereto are of equal value due to the substantial disparity of the contributions of the parties and further due to the agreement and understanding of the parties." Defendant attached deposition testimony to her response in which she asserted that the trial court in her conversion case had decided that Robert was "not an employee," and further explained that "there was a promise of some kind of business relationship. It was undefined. * * * [T]here was some developing business relationship we expected." In that testimony, defendant also acknowledged that she had autho-rized Robert to act as her agent in matters related to the shoe business on some occasions. Accordingly, defendant admitted that some sort of business relationship existed but denied that it was a "general partnership."

Nevertheless, at the summary judgment hearing, defendant responded to plaintiff's argument by explaining that

"I think the biggest single issue that we confront in this case to begin with is not so much whether or not there was a business relationship, a partnership, whatever you may wish to call it. I think the issue is the nature, the extent, and the limitations, if any, that were imposed on this part-nership or this agreement between [the Smalleys]."

Defendant continued:

"When the question comes in, and this is a material question I think throughout, who was the proper contact person for this business relationship, call it a partnership or otherwise. Was it [defendant]? Was it [Robert]? Or could it be either one * * *?"

And again later, defendant expounded on her position:

"Partnership issue, once again, I don't think—there was some kind of a partnership here most likely, limited.

Certainly wasn't a full, open general partnership, both by understanding of the economic relationship and verbal conversations, but there was some kind of a partnership agreement. [Robert's] ability to bind this partnership, that's an issue, a big one. Did he have the legal ability, did * * * [plaintiff] have the reasonable right to rely upon [Robert's] statements to the effect that, 'Don't pay any attention to [defendant], I can make this deal,' and thereby bind the partnership? Was [plaintiff's] belief reasonable?"

Consistently with her concession that some sort of partnership existed between the Smalleys, defendant's focus at the hearing was on the related issue of whether plaintiff had reasonably believed that Robert had authority to enter into the June 2009 contract on behalf of the partnership.

From our review of the record, we conclude that defendant acknowledged that a partnership of some sort existed between the Smalleys and that the only issue that defendant presented to the court was focused on plaintiff's knowledge of Robert's limited authority to bind the partnership. Defendant did not fairly present the trial court with the contentions that she now makes on appeal in a way that would have allowed it to understand and avoid or correct any error. *See Peiffer*, 339 Or at 656; *see also State v. Dumont*, 177 Or App 650, 655, 34 P3d 709 (2001) (concluding that the defendant failed to preserve her argument when she conceded at trial that she had violated a statute, and that any error by the trial court in construing the statute was invited by the defendant's concession).[10]

We also conclude that defendant failed to preserve her third assignment of error. In that assignment, defendant contends that she presented evidence that disputed the amount of damages sought by plaintiff and that, accordingly, "the trial court erred by concluding that damages could be determined on this record as a matter of law."

The central point disputed by the parties regarding damages was the value of the inventory that the Smalleys

---

[10] In a footnote, defendant alternatively argues that, if her first assignment of error is not preserved, we should review it as plain error. ORAP 5.45(1). Suffice it to say that any error under defendant's first assignment of error is not an "error of law apparent on the record," and is not reviewable as plain error. *Id.*

provided to plaintiff for her Gearhart store. Plaintiff alleged that the value was $21,700, and defendant alleged that the value fell between $30,000 and $40,000. Although the parties' pleadings framed that dispute, defendant failed to raise that issue before the trial court during the summary judgment proceedings. Plaintiff asserted in her summary judgment motion that she was due $156,806.55 under the contract. Defendant failed to challenge that assertion in her summary judgment response or at the hearing and, at the end of the summary judgment hearing, she failed to object to plaintiff's request for an order that awarded $156,806.55 in damages. Defendant therefore failed to preserve her third assignment of error.

Accordingly, we only address the merits of defendant's second assignment of error, which is, as defendant frames it, whether there was a genuine issue of material fact that plaintiff had "legally sufficient notice" of Robert's limited authority to act on the partnership's behalf.

We begin with the legal principles that control defendant's second assignment. Because the Smalleys were partners, at least for purposes of our review, ORS 67.090(1) establishes the applicable legal framework. Under that statute,

> "[e]ach partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the name of the partnership, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."

Accordingly, the question is whether defendant adduced evidence in response to plaintiff's summary judgment motion that created a genuine issue of material fact as to whether, at the time that plaintiff and Robert executed the June 2009 contract, plaintiff "knew or had received a notification" that Robert lacked authority to bind the partnership.

Whether a party "knew or had received a notification" that a partner lacked authority implicates the statutory

definitions in ORS 67.040.[11] In relevant part, that statute provides:

"(1) A person knows a fact if the person has actual knowledge of it.

"(2) A person has notice of a fact if the person:

"(a) Knows of it;

"(b) Has received a notification of it; or

"(c) Has reason to know it exists from all the facts known to the person at the time in question.

"(3) A person notifies or gives notification to another by taking steps reasonably required to inform the other person in the ordinary course, whether or not the other person learns of it.

"(4) A person receives a notification when the notification:

"(a) Comes to the person's attention; or

"(b) Is addressed to the person and is duly delivered at the person's place of business or at any other place held out by the person as a place for receiving communications."

Accordingly, under ORS 67.090(1), a partnership is bound by a partner's act, even if the partner lacks authority for that act, unless the person dealing with the partner has "actual knowledge of" or has received a notification of, the partner's lack of authority. Noticeably absent from ORS 67.090(1) is the concept of "inquiry notice" that is reflected in ORS 67.040(2)(c)—*i.e.*, a reason to know "from all the facts known to the person at the time in question."

The legislative history demonstrates that the legislature purposefully excluded "inquiry notice" from ORS 67.090(1). ORS 67.040 and ORS 67.090 were part of the Oregon Legislature's adoption of the Uniform Law Commission's Uniform Partnership Act 1997 (RUPA). Or Laws 1997, ch 775,

---

[11] ORS 67.010 was renumbered as ORS 67.040 in 2013. No substantive changes were made to the statute's text and all references in this opinion are to the 2013 version of the statute.

§§ 2, 11. ORS 67.090(1) is identical to section 301(1) of RUPA. The commentary to RUPA section 301(1) notes that RUPA effected a change from the prior version of the uniform act, the Uniform Partnership Act 1914 (UPA):

> "[A]s used in the UPA, the term 'knowledge' embodies the concept of 'bad faith' knowledge arising from other known facts. As used in RUPA, however, 'knowledge' is limited to actual knowledge. *See* Section 102(a). Thus, RUPA does not expose persons dealing with a partner to the greater risk of being bound by a restriction based on their purported reason to know of the partner's lack of authority from all the facts they did know. Compare Section 102(b)(3) (notice)."

RUPA § 301 Comment 2, ULA Partnership § 301; *see Jeld-Wen, Inc. v. PacifiCorp*, 240 Or App 124, 129, 245 P3d 685 (2010) ("Commentary to a uniform law adopted in Oregon serves as legislative history."). The commentary to RUPA section 102 (the equivalent of ORS 67.040) also acknowledges the intended change, explaining that "knowledge" under RUPA is cognitive awareness of a fact, rather than the traditional concept of inquiry notice that was contained in UPA, *i.e.*, knowledge as arising from other known facts.[12] RUPA § 102 Comment, ULA Partnership § 102.

Given that legal framework, we conclude that no reasonable factfinder could conclude from the evidence in the summary judgment record that plaintiff "knew or had received a notification" that Robert lacked authority to contract on behalf of the partnership. As an initial matter, there is no dispute that plaintiff did not "receive[] a notification" under the statute. That leaves the question of whether there as a genuine issue of material fact that plaintiff had actual knowledge that Robert was not authorized to contract on the behalf of the partnership in June 2009.

On appeal, defendant relies on the entirety of the circumstances in the parties' dealings to contend that summary

---

[12] As commentators have acknowledged, the theory behind the change is that "the risk of loss from partner misconduct more appropriately belongs on the partnership than on third parties who do not knowingly participate in or take advantage of the misconduct, whether or not they had reason to know that misconduct was taking place." J. Dennis Hynes, *Notice and Notification Under the Revised Uniform Partnership Act: Some Suggested Changes*, 2 J. Small & Emerging Bus. L. 299, 308 (1998).

judgment was improper. However, much of that evidence is immaterial to the question before us. For example, defendant relies on evidence of communications between her and Robert that limited Robert's authority. But the issue is whether plaintiff had actual knowledge of any limitation on Robert's authority, not whether such a limitation actually existed. Defendant also maintains that the circumstances of the parties' past dealings, including the February 2009 agreement reached orally, made it unreasonable for plaintiff to rely on Robert's representations that he was authorized to enter into the June 2009 contract. Defendant's evidence on that point, however, is directed to the concept of "inquiry notice," which is not applicable under ORS 67.090(1). In the end, defendant's only evidence of plaintiff's actual knowledge of a limitation on Robert's authority is defendant's statement to plaintiff in the fall of 2008 that, "[i]f anything comes to fruition, I will be your contact." She claimed that that statement explicitly notified plaintiff that Robert could not enter into any purchase agreement on behalf of the partnership. At the summary judgment hearing, defendant acknowledged that, outside of that statement, plaintiff had not otherwise been informed of any limitation on Robert's authority.

We conclude that defendant's statement to plaintiff in the fall of 2008 is not sufficient to create a genuine issue of material fact that plaintiff actually knew that Robert's authority was limited in June 2009. Most importantly, the statement is ambiguous. Defendant did not explicitly state that Robert lacked authority to bind the partnership. Further, defendant made that statement several months before Robert and plaintiff executed the June 2009 contract and, at that time, Robert had explicitly represented to plaintiff that he had authority to enter into the contract on the partnership's behalf. In short, defendant's statement in the fall of 2008 to plaintiff that, "if anything comes to fruition, I will be your contact," was not explicit enough to create a genuine issue of material fact as to whether—after several months of discussing with the Smalleys their assumption of ownership of Place 2, along with Robert's explicit representations to plaintiff that he was authorized to bind the

partnership—plaintiff had actual knowledge that Robert lacked such authority.

Affirmed.